[No. B153994. Second Dist., Div. Two. Mar. 28, 2003.]

AMALGAMATED TRANSIT UNION LOCAL 1277, Plaintiff and Appellant, v.
LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, Defendant and Respondent.

674

676

**COUNSEL**

Neyhart, Anderson, Freitas, Flynn & Grosboll, William J. Flynn and Linda Lu Castronovo for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Brian P. Walter and Kevin R. Dale for Defendant and Respondent.

**OPINION**

**BOREN, P. J.**—An employee who eventually recovered fully from an industrial injury sought to return to her job as a mechanic. The employee's union filed a grievance under the collective bargaining agreement requesting the employee be returned to work and seeking back pay for her. But even after she was capable of working without any restrictions or limitations, she was for a time not permitted by her employer to return to work.

Appellant Amalgamated Transit Union Local 1277 (the Union) appeals from the trial court's denial of a petition to compel the employer, respondent Los Angeles County Metropolitan Transit Authority (the MTA), to arbitrate pursuant to their collective bargaining agreement. We find that the Workers' Compensation Act is not an exclusive remedy that would preclude arbitration, that the dispute is covered by the arbitration provision in the collective bargaining agreement, and that arbitrator is to resolve the issue of attorney fees.

FACTUAL AND PROCEDURAL SUMMARY

Nadine Sutherland has been employed by the MTA as a bus mechanic since 1985. In December of 1995, Sutherland was working at her job and holding a tool when she injured a finger on her left hand, her dominant hand. She recovered from the injury to her finger, but then developed tendonitis. Thereafter, Sutherland's radial collateral ligament was partially torn, and she was treated with a series of cortisone injections. In February of 1997, she had some loss of strength in her grip, but was deemed fully capable of performing her duties as a mechanic. She was not considered a qualified injured worker.

Further problems ensued with Sutherland's left arm. She was diagnosed as having radial tunnel syndrome. In January of 1998, Sutherland had surgery. The surgery, which resulted in a six-inch scar on her on her forearm, was successful. Approximately three months later, she returned to her job without any restrictions. But her symptoms returned, and she stopped working for 10 days at a time in September of 1998 and February of 1999. Sutherland was treated with a corticosteroid injection into the radial tunnel and with an anti-inflammatory medication. During a two-year-long disability leave that began on May 30, 1999, Sutherland's condition improved.

In the interim, Sutherland saw several doctors regarding her workers' compensation claim. In August of 1999, Dr. Mark Mandel, the agreed medical examiner for Sutherland's workers' compensation case, noted that Sutherland's job as a mechanic required her to lift and move items weighing up to 50 pounds, although she occasionally lifted heavier items. Dr. Mandel found that Sutherland "can do occasional lifting up to 75 lbs." but would need assistance in lifting items heavier than that.

However, Dr. Mandel concluded that in light of the industrial injury Sutherland had suffered, her job would have to be modified for her to continue working as a mechanic. Dr. Mandel determined that "[i]f modification is not possible, then she is indeed to be considered a qualified injured worker." The MTA determined that it could not provide the job modifications proposed by Dr. Mandel and deemed her a qualified injured worker.

In September of 1999, Dr. Brent Miller, Sutherland's primary treating physician, issued a progress report. He recommended amending Sutherland's work status to require no repetitive strenuous gripping or grasping with the left hand and a weight lifting restriction of 25 pounds. Dr. Miller found that

this would preclude Sutherland from "returning to her usual and customary job as a heavy duty bus mechanic," and he recommended vocational rehabilitation.

In December of 1999, Sutherland through the Union filed a grievance. The grievance alleged that she wanted to go back to work but that the MTA acted in bad faith. Sutherland referred to Dr. Mandel's observation that mechanics are required to lift items up to 50 pounds, and that Sutherland could lift items up to 75 pounds. She thus requested back pay from August 11, 1999, the date of Dr. Mandel's report, and requested to be allowed to return to work.[1]

Several days later, the MTA denied Sutherland's grievance. The MTA's denial of the grievance stated: "We are not able to modify your job to the degree indicated on the Agreed Medical Examiner's Report. Therefore based on the Agreed Medical Examiner's Report you have been deemed a Qualified Injured Worker. You are eligible to receive Vocational Rehab." The MTA's denial was based on its determination that Sutherland's complaint was "not a grievance because there has been no contract violation [and that the matter] is a workers comp issue."

Approximately six months later, on June 1, 2000, after a second-step hearing on Sutherland's grievance, the MTA again denied the grievance. The MTA defined the issue as whether Sutherland had been "denied the opportunity to work." The MTA noted that the Union's position was that since Dr. Mandel, the agreed medical examiner, had found 10 months earlier that Sutherland would only need assistance in lifting objects weighing more than 75 pounds, she would be able to return to work as a mechanic if the MTA would accommodate this restriction. The MTA observed that Dr. Mandel had also suggested additional work restrictions for Sutherland and a modification of her job with a "lateral shift" within the transit authority structure to a less hand-intensive job. However, the MTA denied the grievance at the second step on the basis that "the final decision on her ability to return to her pre-injury occupation will be adjudicated by the Worker's Compensation Appeals Board."

---

[1] The collective bargaining agreement between the MTA and the Union, effective from July 1, 1997, to June 30, 2000 (the 1997 Agreement), and the subsequent agreement effective July 1, 2000 (the 2000 Agreement), both provide, in article 6, section A, as follows: "All employees covered by this Agreement, who are available and work their assignments, shall be guaranteed eight (8) hours per day, and forty (40) hours per week, except as provided elsewhere in this Agreement." Other sections of both agreements also indicate that the MTA may discipline an employee only "for proper cause."

On June 7, 2000, the Union requested that the MTA arbitrate the grievance.[2] The MTA refused to arbitrate Sutherland's request for back pay and to return to work.

On June 14, 2000, Sutherland applied for a disability retirement from the MTA. At the request of the MTA in August of 2000, Dr. J. Yogaratnam evaluated Sutherland, who was still on a total disability medical leave. Sutherland did not at that time consider herself to have any current medical problem and stated that she "would like to go back to work." Dr. Yogaratnam's examination revealed no evidence of any medical deficiency, and he concluded that Sutherland "may return to her regular work duties without restriction." The MTA then denied Sutherland's request for a disability retirement.

In September of 2000, the MTA sent the Workers' Compensation Appeals Board (WCAB) a copy of Dr. Yogaratnam's report, which found Sutherland capable of returning to her job without any restrictions. The WCAB then ordered Dr. Mandel to reexamine Sutherland.

On November 13, 2000, Dr. Mandel reexamined Sutherland and issued to the WCAB an agreed medical examiner's final rating report. Dr. Mandel suggested only as "a prophylactic restriction" a modified position as a mechanic, permitting her to "return to work as long as she obtained some assistance in lifting items weighing more than 75 lbs.," and finding that she did not need to be retrained. According to Dr. Mandel, Sutherland "does have sufficient function that she can return to work as a Mechanic A [her classification at the MTA]."

Dr. Mandel also noted in his November 2000 report that approximately three months earlier Dr. Yogaratnam had similarly determined that Sutherland "could return to her regular job duties without restrictions." Dr. Mandel concluded as follows: "I am not going to give her an actual restriction, but I

---

[2]In both the 1997 and 2000 Agreements, article 20, section A, provides: "If a grievance or dispute with respect to the interpretation or application of any terms of this Agreement is not satisfactorily settled, the Union may demand in writing that it be submitted to arbitration . . . and the [MTA] and the Union shall arbitrate such grievances or disputes."

In the 1997 Agreement, article 20, section B, provides: "Unless the parties otherwise agree in writing, *the issues to be submitted to the [Arbitration] Board shall be limited to those set forth and defined in the decision by the [MTA]. The Board's authority shall be limited to the determination of the issue or issues thus set forth. . . .*" (Italics added.) However, in the 2000 Agreement, article 20, section B, provides as follows: "[Each party shall submit] a statement of the issue(s) to be arbitrated and the proposed remedy, if any. . . . *In cases where the parties have not agreed on the issue(s), the neutral arbitrator will frame the issue to be decided. . . .*" (Italics added.)

am going to phrase it as a prophylactic restriction that is not of sufficient magnitude that it is going to impact upon her ability to safely perform her job. . . . The patient, therefore, should be returned to her job duties as a Mechanic A, and this will obviate the need for retraining."

According to the MTA's risk management claims manager, the MTA then decided to take Dr. Mandel's deposition to "clarify" statements in his report and to explain certain unspecified contradictions between his August 1999 report and his November 2000 report. Apparently, some delay ensued because of Dr. Mandel's schedule, and an MTA attorney finally took his deposition on April 17, 2001.

Meanwhile, on April 10, 2001, the Union filed a petition to compel arbitration. At a hearing on the matter, the trial court remarked that nothing in the collective bargaining agreements "requires the MTA to arbitrate the issue of an employee's ability to return to work if the employee has a pending workers' comp claim and an agreed medical examiner has stated that the employee needs modification, vocational rehabilitation or restriction. Such an agreement would not make any sense." The trial court also opined that since the MTA was abiding by the statements of the medical examiners, the Union had not demonstrated a viable discrimination claim under Labor Code section 132a (a claim, however, later settled before the WCAB and resolved in Sutherland's favor).

On August 20, 2001, the trial court denied the Union's petition to compel arbitration and for an award of attorney fees, and then denied the Union's alternative request to amend the complaint to state a claim for breach of contract. After the MTA prevailed, it moved for attorney fees and costs as provided in the 2000 Agreement, but thereafter withdrew its request.

On May 9, 2001, the MTA permitted Sutherland to return to work as a mechanic. At the time Sutherland returned to work from her disability leave, her case before the WCAB was still pending.

After the appeal in the present case was filed, all Sutherland's workers' compensation claims were resolved. On December 12, 2002, Sutherland was awarded a $5,000 settlement as to the underlying disability claim and $35,000 for a Labor Code section 132a discrimination claim as to back pay or lost wages. The settlement specified that the amount awarded for back pay or lost wages was to be credited to the MTA in the event of any recovery in the present case.

## DISCUSSION

*I. Workers' compensation not an exclusive remedy here*

■ According to the MTA, Sutherland's grievance seeking her return to work related directly to her workers' compensation case, and her grievance was merely an attempt to circumvent the findings of the agreed medical examiner in the workers' compensation proceeding. However, contrary to the MTA's contention, Sutherland's pending workers' compensation claim does not defeat her effort to arbitrate the present claim.

The Workers' Compensation Act (Lab. Code, § 3200 et seq.) generally provides an exclusive remedy for injuries incurred in the course of a person's employment. (Lab. Code, §§ 3600, 3602, subd. (a).) Where the exclusive remedy rule applies (see *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 13-17 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016]), it precludes "an action at law." (*Doney v. Tambouratgis* (1979) 23 Cal.3d 91, 96 [151 Cal.Rptr. 347, 587 P.2d 1160].) The statutory language establishing workers' compensation as an exclusive remedy against an employer provides that an employee's industrial injury precludes an employee from bringing "an action at law for damages against the employer." (Lab. Code, § 3602, subd. (a).) The present case, however, involves "[a] proceeding to compel arbitration [that] is in essence a suit in equity to compel specific performance of a contract." (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341].) The Union's equitable petition to compel arbitration thus does not fall within the statutory language, which prohibits only actions at law for damages.

The situation is akin to that in *Hicks v. Allegheny East Conference Ass'n* (D.C. 1998) 712 A.2d 1021, where a teacher who received workers' compensation benefits for an injury resulting from an altercation with a student was not precluded from filing a suit challenging the school's sanction of probation placed upon her for the incident. The teacher sought on appeal only injunctive relief to enforce the grievance procedures contained in her employment contract. Her suit was a suit in equity. As in the present case, the exclusivity provision in the workers' compensation statute applied only to suits at law for damages. (*Id.* at p. 1022.)

Additionally, Sutherland's workers' compensation claim entailed a Labor Code section 132a discrimination claim, which ultimately was settled in her favor, and such a claim is not subject to the exclusive remedy rule. In *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143 [77 Cal.Rptr.2d 445, 959 P.2d 752], our Supreme Court held that a Labor Code section 132a claim did

not provide the exclusive remedy for employment discrimination based on disability arising from an industrial injury. The court explained that Labor Code sections 3600 and 3602, which set forth the exclusivity of the workers' compensation remedy as against an employer, apply only to liability for compensation provided in division 4 of the Labor Code, while section 132a is in division 1 of the code. (*City of Moorpark v. Superior Court, supra,* at pp. 1154-1155.)

"Thus, the plain language of the exclusive remedy provisions of the workers' compensation law apparently limits those provisions to division 4 remedies. Remedies that the Legislature placed in other divisions of the Labor Code are simply not subject to the workers' compensation exclusive remedy provisions." (*City of Moorpark v. Superior Court, supra,* 18 Cal.4th at p. 1155; see also *Currie v. Workers' Comp. Appeals Bd.* (2001) 24 Cal.4th 1109, 1113 [104 Cal.Rptr.2d 392, 17 P.3d 749].) Therefore, independent of any other reasons, because Sutherland had a Labor Code section 132a workers' compensation discrimination claim, she is not subject to the exclusive remedy rule.

Moreover, the present arbitration claim is the flip side of a workers' compensation claim and distinguishable from it. Sutherland's arbitration claim does not seek "compensation" or concern any related "right or liability" (Lab. Code, § 5300) for an "industrial personal injury." (*Shoemaker v. Myers, supra,* 52 Cal.3d at p. 16.) Rather, she seeks her salary for when she was allegedly no longer suffering the disabling effects of an industrial injury and was able to work, but was denied the right to work guaranteed in the collective bargaining agreement. Sutherland thus did not attempt to arbitrate injury compensation issues that were pending before the WCAB, and the Union acknowledges that there cannot be a double recovery of backpay.

Finally, in addition to the arbitration claim for back pay for the period when she was able but not permitted to work, Sutherland also demanded to be returned to work.[3] Indeed, the grievance as defined by the MTA in its letter dated June 1, 2000, was whether "the grievant [has] been denied the opportunity to return to work." That issue, as framed by the MTA, may reasonably be construed by an arbitrator to include not just a demand for back pay for when Sutherland should have been working, but also a demand that she actually be returned to work. However, a return to work is not one

---

[3]We note that the parties use the term "reinstatement," when referring to Sutherland's return to work. However, reinstatement more properly applies to a situation where the employee has been discharged (see Lab. Code, § 132a, subd. (1)), which is not the situation here.

of the workers' compensation benefits available by statute (Lab. Code, §§ 5300, 4550-4855) and covered by division 4 of the Labor Code to which the exclusive remedy rule would apply. (See *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 817 [102 Cal.Rptr.2d 562, 14 P.3d 234].) Sutherland's return to work was thus a remedy unavailable in this workers' compensation context, further undermining the notion of the exclusivity of workers' compensation as a remedy here.

Accordingly, workers' compensation is not an exclusive remedy in the present situation and does not bar arbitration of Sutherland's claim.

## II. *General principles of arbitration*

A petition to compel arbitration is resolved in a summary proceeding with the trial court sitting as trier of fact and weighing declarations, documentary evidence and any oral testimony. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Pursuant to Code of Civil Procedure section 1281.2, unless the petitioner has waived arbitration, grounds exist for revocation of the agreement, or a party to the arbitration agreement is also a party to a pending matter with a third party and there is a possibility of conflicting rulings on a common issue, the trial court "shall order" the parties to arbitrate the controversy "if it determines that an agreement to arbitrate the controversy exists."

Unless the parties have clearly and unmistakably provided otherwise, the preliminary question of whether parties to a collective bargaining agreement have agreed to arbitrate a particular dispute is decided by the court, not the arbitrator. (*United Public Employees v. City and County of San Francisco* (1997) 53 Cal.App.4th 1021, 1026 [62 Cal.Rptr.2d 440].) Thus, the parties generally are not required to " 'arbitrate the arbitrability question.' " (*Litton Financial Printing Div. v. NLRB* (1991) 501 U.S. 190, 208-209 [111 S.Ct. 2215, 2226-2227, 115 L.Ed.2d 177], quoting *AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 651 [106 S.Ct. 1415, 1419-1420, 89 L.Ed.2d 648].)

In determining whether a matter is subject to arbitration, courts apply the presumption in favor of arbitration (*Engalla v. Permanente Medical Group, Inc., supra,* 15 Cal.4th at p. 971) and generally invoke ordinary rules of contract interpretation. (*Maggio v. Winward Capital Management Co.* (2000) 80 Cal.App.4th 1210, 1214-1215 [96 Cal.Rptr.2d 168].) " 'Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be

interpreted to cover the dispute.' " (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 652 [35 Cal.Rptr.2d 800].) "However, there is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate." (*United Public Employees v. City and County of San Francisco, supra,* 53 Cal.App.4th at p. 1026.)

■ The right to arbitration ultimately depends upon the terms of the collective bargaining agreement, and a petition to compel arbitration is essentially a suit in equity seeking specific performance of that agreement. (*United Public Employees v. City and County of San Francisco, supra,* 53 Cal.App.4th at p. 1026.) An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294.)

■ " 'Whether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of interpretation was introduced in the trial court.' [¶] . . . Where the trial court's decision on arbitrability is based upon resolution of disputed facts, we review the decision for substantial evidence. [Citation.]" (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71 [100 Cal.Rptr.2d 683].)

Here, there is no disputed extrinsic evidence regarding the proper interpretation of the arbitration clause. We thus are not bound by the trial court's construction of the agreement. Rather, we review the matter de novo and make an independent determination of whether the agreement to arbitrate exists and applies to the present circumstances. (See *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83, 89 [80 Cal.Rptr.2d 147]; *Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1111 [63 Cal.Rptr.2d 261].)

III. *The arbitration clause in the collective bargaining agreements*

A. *Application of the terms of the agreements*

Both the 1997 and 2000 Agreements provide that all employees "who are available and work their assignments, shall be guaranteed" a full week of work. Both agreements also indicate that the MTA may discipline an employee "for proper cause." And both the 1997 and 2000 Agreements provide that if a "grievance or dispute" regarding "the interpretation or application of any terms of this Agreement" is not satisfactorily settled, the Union may demand "that it be submitted to arbitration" and the Union and the MTA "shall arbitrate such grievances or disputes."

■ In the present case, the grievance is on its face governed by the arbitration clause. The broad arbitration clause covers by its terms a "grievance or dispute" regarding "the interpretation or application of any terms" of

the collective bargaining agreement. The issue in dispute here was whether the MTA's failure to return Sutherland to work breached the contract provisions noted above that guaranteed an "available" employee a full week of work and ensured that the employee would not be disciplined without "proper cause."

Indeed, after the second-step hearing on Sutherland's grievance, the MTA itself defined the grievance as whether "the grievant [has] been denied the opportunity to work." Since under the 1997 Agreement the issues submitted to arbitration were limited to those set forth and defined by the MTA, whether Sutherland was improperly "denied the opportunity to work" because she was, within the meaning of the provisions of the collective bargaining agreement, "available" but not given work and/or thus disciplined without "proper cause" were matters for the arbitrator to resolve.

B. *The merits of Sutherland's claims are to be determined by arbitration*

■ "[A]ll disputes as to the meaning, interpretation and application of any clause of the collective bargaining agreement, even those that prima facie appear to be without merit, are the subject of arbitration." (*Posner v. Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 184 [14 Cal.Rptr. 297, 363 P.2d 313].) The trial court's role is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." (*Id.* at p. 175.) The arbitrator decides any arbitrable claim, "even if it appears to the court to be frivolous." (*AT&T Technologies v. Communications Workers, supra,* 475 U.S. at pp. 649-650 [106 S.Ct. at p. 1419].)

"[T]he union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. 'The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.' " (*AT&T Technologies v. Communications Workers, supra,* 75 U.S. at p. 650 [106 S.Ct. at p. 1419].)

■ It appears that the trial court may have improperly focused on the merits of Sutherland's claim. As the trial court remarked before denying the petition to compel arbitration, it "would not make any sense" for the collective bargaining agreement to require "the MTA to arbitrate the issue of an employee's ability to return to work if the employee has a pending

workers' comp claim and an agreed medical examiner has stated that the employee needs modification, vocational rehabilitation or restriction." However, whether Sutherland was "available" (art. 6, § A of both Agreements) for work even with a job modification or restriction, which the Union argues would not affect her normal job requirements, is a matter for the arbitrator to determine.

Moreover, medical problems, as here, often are not static but subject to improvement. Therefore, even if Sutherland were under any analysis deemed not "available" for work at the time of the agreed medical examiner's report, it may well be argued before the arbitrator that she was denied the opportunity to work when she was thereafter fully recovered and "available" for work. Specifically, after Dr. Mandel's August 1999 agreed medical examiner's report, the significance and meaning of which the parties debate, Dr. Yogaratnam's August 2000 report found no evidence of any medical disability and deemed Sutherland capable of returning "to her regular work duties without restriction." Other medical evaluations and workers' compensation matters ensued, but the MTA did not return Sutherland to work until May 9, 2001. We, of course, express no opinion as to whether a claim for back pay during this hiatus in Sutherland's return to work, from August of 2000 to May of 2001, has any arbitrable merit.

The MTA erroneously urges that Sutherland cannot seek to arbitrate events that occurred after the request to arbitrate and thus cannot rely on facts after the initial report of Dr. Mandel, the agreed medical examiner. The MTA thus seeks to preclude any reliance on Dr. Yogaratnam's report in August of 2000 and the agreed medical examiner's subsequent report in November of 2000.

First, although the MTA urges that the agreed medical examiner's opinion is the only medical advice that is valid in a WCAB proceeding,[4] the proceeding here was an arbitration petition under the collective bargaining agreement and not a WCAB proceeding. Thus, Dr. Yogaratnam's report regarding Sutherland's recovery is relevant. Second, nothing in the collective bargaining agreement precludes the arbitrator from considering subsequent events as a medical situation progresses. The untenable alternative would be to require Sutherland to have filed a grievance and then a petition to compel arbitration every time a new medical report was issued.

---

[4]Labor Code section 4061, subdivision (n) provides, in pertinent part, that "reports offered by the treating physician or physicians who treated the employee for the injury and comprehensive medical evaluations prepared by a qualified medical evaluator . . . shall be admissible."

Accordingly, the merits of Sutherland's claims must be determined by the arbitrator.

### C. The trial court properly denied the Union's motion to amend the petition to include a cause of action for breach of contract

■ After the trial court gave the parties its tentative ruling denying the Union's motion to compel arbitration, the Union sought to amend its petition to a complaint for breach of contract. The trial court stated that it was reviewing a special proceeding to compel arbitration (Code Civ. Proc., § 1281.2), ruled that it had no authority to add a breach of contract claim, and suggested that the Union file a separate civil complaint. The MTA has cited no authority, and we have found none, which creates any procedural bar to the trial court's broad discretion to permit the amendment of pleadings (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 938-939 [101 Cal.Rptr. 568, 496 P.2d 480]) and thus to eliminate the multiplicity of lawsuits (*Los Angeles Police Protective League v. City of Los Angeles* (1985) 163 Cal.App.3d 1141, 1149 [209 Cal.Rptr. 890]).

However, an amendment to allege a breach of contract here would have been inappropriate because the matter is covered by the broad terms of the collective bargaining agreements. As provided in article 20, section A of both the 1997 and 2000 Agreements, arbitration shall resolve any "grievance or dispute with respect to the interpretation or application of any terms of this Agreement." Since this is not a situation where the parties have agreed to arbitrate some issues and not others (see *Parker v. Twentieth Century-Fox Film Corp.* (1981) 118 Cal.App.3d 895, 906 [173 Cal.Rptr. 639]), a contract cause of action is inappropriate.

### IV. Attorney fees

■ The Union's motion to compel arbitration also sought reasonable attorney fees. The 2000 Agreement provided for attorney fees payable by the party that wrongfully refuses to arbitrate. The 1997 Agreement had no attorney fees provision. Therefore, the question is whether the 2000 Agreement, which became effective July 1, 2000, applies. The initial grievance was filed in December of 1999, but the MTA formally denied requests to arbitrate on February 22, 2001, and April 2, 2001. The present lawsuit was filed on April 10, 2001.

The MTA asserts that the provision for attorney fees in the 2000 Agreement is inapplicable because the grievance arose during the 1997 Agreement, which did not provide for attorney fees. On the other hand, the Union

relies on the triggering language in the 2000 Agreement that provides for attorney fees to the prevailing party "[w]henever either party refuses arbitrate" and "a court action follows," all of which occurred during the 2000 Agreement. However, neither collective bargaining agreement specifies how to deal with any situation that spans more than one agreement, and neither collective bargaining agreement defines, for example, any cutoff dates in terms of either the filing of the grievance, the request to arbitrate, or the petition to compel arbitration.

We conclude that as to attorney fees, as well as any other matters possibly covered by the 2000 Agreement, it is the task of the arbitrator to interpret and decide the interrelationship of the clauses in the two agreements. The broadly worded arbitration clause is identical in article 20, section A, of both agreements and, as previously noted, covers without any limitation any "grievance or dispute with respect to the interpretation or application of any terms" in the agreements.

Moreover, having the arbitrator interpret and decide the interrelationship of the two collective bargaining agreements is consistent with the fundamental nature of such agreements. " ' "[A] collective bargaining agreement is not an ordinary contract" (*John Wiley & Sons* v. *Livingston* (1964) 376 U.S. 543, 550 [84 S.Ct. 909, 914-915, 11 L.Ed.2d 898][)] and is not governed by the common law concepts that control private contracts. (*Carpenters 46 Northern Cal. Counties Conf. Bd.* v. *Valentine* (1982) 131 Cal.App.3d 534 [182 Cal.Rptr. 500].) "[*I*]*t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.*" (*Steelworkers* v. *Warrior & Gulf Co.* (1959) 363 U.S. 574, 578 [80 S.Ct. 1347, 1350-1351, 4 L.Ed.2d 1409].)' [Citation.]" (*Mechanical Contractors Assn. v. Greater Bay Area Assn.* (1998) 66 Cal.App.4th 672, 684 [78 Cal.Rptr.2d 225].)

Because the parties to a collective bargaining agreement cannot anticipate every problem and situation that may arise, the role of the arbitrator is particularly significant. "[The labor arbitrator] does not merely provide an alternative means of resolving disputes, nor is he chosen simply for his expertise in a specific field or his ability to give definitive answers with greater efficiency and speed than the courts. [Citation.] Unlike the commercial contract, which is designed to be a comprehensive distillation of the parties' bargain, the collective bargaining agreement is a skeletal, interstitial document. [Citation.] The labor arbitrator is the person the parties designate to fill in the gaps; for the vast array of circumstances they have not considered or reduced to writing, the arbitrator will state the parties' bargain. He is 'the parties' officially designated "reader" of the contract . . . their

joint *alter ego* for the purpose of striking whatever supplementary bargain is necessary' to handle matters omitted from the agreement." (*Stead Motors v. Automotive Machinists Lodge 1173* (9th Cir. 1989) 886 F.2d 1200, 1205 (en banc), cert. den. (1990) 495 U.S. 946 [110 S.Ct. 2205, 109 L.Ed.2d 531]; see also *United Broth. of Carpenters #1780 v. Desert Palace* (9th Cir. 1996) 94 F.3d 1308, 1311.)

Accordingly, it is the task of the arbitrator to interpret and decide the interrelationship of the two collective bargaining agreements and determine if the attorney fees provision in the 2000 Agreement is applicable.

## DISPOSITION

The judgment denying the petition to compel arbitration is reversed, and the parties are ordered to arbitrate their dispute. The Union is entitled to costs on appeal.

Doi Todd, J., and Ashmann-Gerst, J., concurred.

A petition for a rehearing was denied April 17, 2003, and respondent's petition for review by the Supreme Court was denied June 25, 2003. George, C. J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.