Filed 7/26/13  Mercado v. Doctors Med. Center of Modesto CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SUSAN MERCADO, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DOCTORS MEDICAL CENTER OF MODESTO, INC., <br><br> Defendant and Appellant. | F064478 <br><br> (Super. Ct. No. 670116) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus.  Timothy W. Salter, Judge.

Horvitz & Levy, David S. Ettinger, James A. Sonne, Jeremy B. Rosen; Fox Rothschild and Jeffrey D. Polsky for Defendant and Appellant.

Rancaño & Rancaño and David C. Rancaño for Plaintiff and Respondent.

-ooOoo-

Defendant appeals from the order denying its petition to compel arbitration of the disability discrimination claims asserted in plaintiff's complaint.  The trial court denied

the petition on the ground the arbitration agreement was unconscionable. We conclude the agreement was not substantively unconscionable and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a complaint against her employer, Doctors Medical Center of Modesto, Inc., alleging three causes of action sounding in disability discrimination. In response, defendant filed a petition to compel arbitration pursuant to Code of Civil Procedure section 1281.2. Defendant asserted plaintiff agreed to arbitrate employment disputes by signing an employee acknowledgement form, which stated that she acknowledged receipt of the employee handbook and that she voluntarily agreed to submit all employment related disputes, with specified exceptions, to binding arbitration in accordance with the employee handbook. Plaintiff opposed the petition, arguing there was no enforceable agreement to arbitrate because defendant did not sign the acknowledgement, plaintiff was not aware when she signed the acknowledgement that it included an arbitration provision, and the arbitration agreement was unconscionable. After hearing, the trial court denied the petition to compel on the ground the arbitration agreement was unconscionable and therefore unenforceable. Defendant appeals, arguing the arbitration agreement is not unconscionable and a recent United States Supreme Court case, *AT&T Mobility LLC v. Concepcion* (2011) __ U.S. __, 131 S.Ct. 1740 (*Concepcion*), held that the Federal Arbitration Act (FAA) preempted the state authorities on which the trial court's reasoning was based.

## DISCUSSION

### I.    Burden of Proof and Standard of Review

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it

2

determines that [¶] … [g]rounds exist for the revocation of the agreement." (Code Civ. Proc., § 1281.2, subd. (b).) The party seeking arbitration bears the burden of proving by a preponderance of the evidence the existence of an arbitration agreement; the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense to enforcement of the agreement, including unconscionability. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) "Absent conflicting extrinsic evidence, the validity of an arbitration clause, including whether it is subject to revocation as unconscionable, is a question of law subject to de novo review." (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 702 (*Serpa*).) Where the trial court's decision is based on resolution of disputed facts, however, the substantial evidence standard of review applies to the factual findings. (*Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Trans. Authority* (2003) 107 Cal.App.4th 673, 685.)

## II.    Effect of *Concepcion*

The decision in *Concepcion* did not preclude the trial court from relying on unconscionability as a ground for invalidating an arbitration agreement. In *Concepcion*, the court overruled *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*), which had held that class action waivers in certain adhesive consumer contracts were per se unconscionable when the party with the superior bargaining power engaged in a scheme to defraud large numbers of consumers out of individually small sums of money; *Discover Bank* reasoned such waivers had the practical effect of exempting the wrongful party from responsibility for its own fraud. (*Concepcion, supra*, 131 S.Ct. at p. 1746.) *Concepcion* held that the rule set out in *Discover Bank* was preempted by the FAA. (*Concepcion*, at p. 1753.) The FAA, which was enacted in response to widespread judicial hostility to arbitration agreements, provides that arbitration agreements are

3

"valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) The final provision, the "saving clause," "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (*Concepcion,* at p. 1746.) The *Concepcion* court concluded the FAA did not permit a state to rely on categorical rules prohibiting arbitration of a particular type of claim. (*Id*. at p. 1747.) Although California's general unconscionability doctrine was not such a categorical rule, because the *Discover Bank* rule would apply to most consumer contracts, it stood "as an obstacle to the accomplishment of the FAA's objectives, " one of which was to "'ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.'" (*Concepcion,* at p. 1748.) Allowing a party to a consumer contract to demand class wide arbitration notwithstanding an express class arbitration waiver in the arbitration agreement "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." (*Ibid*.) Further, imposing class wide arbitration on a party who did not agree to it is inconsistent with the FAA. (*Id*. at pp. 1750–1751.)

*Concepcion* does not "preclude[] a court from relying on unconscionability as a ground for invalidating an arbitration provision … for three reasons. First, our Supreme Court's decision in *Pinnacle*, which was handed down more than a year after *Concepcion*, applied California's traditional unconscionability principles in concluding that an arbitration provision governing a condominium complex was not unconscionable. Second, *Concepcion* itself recognized the continuing validity of the doctrine of unconscionability as a basis for declaring an arbitration agreement unenforceable. [Citation.] Third, the California Courts of Appeal have recognized that '*Concepcion* did

4

not eliminate state law unconscionability as a defense to the enforcement of arbitration agreements subject to the Federal Arbitration Act.' [Citations.]" (*Vargas v. SAI Monrovia B, Inc*. (2013) 216 Cal.App.4th 1269, 1287–1288.)

Accordingly, unconscionability remains a valid basis for refusing to enforce an arbitration agreement when it does not interfere with the fundamental attributes of arbitration.

## III.    Agreement to Arbitrate

Plaintiff's complaint alleges she was employed by defendant. Defendant presented evidence that plaintiff entered into an agreement to arbitrate disputes arising out of her employment with defendant. The agreement was headed "EMPLOYEE ACKNOWLEDGMENT," bore plaintiff's signature, and was dated April 23, 2007. It contained the following language:

> "I acknowledge that I have received a copy of the Tenet Fair Treatment Process brochure. *Except to the extent that any applicable collective bargaining agreement provided otherwise*, I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes except 'Excluded Issues' that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy of any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use of arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of American Arbitration Association ('AAA').

> "I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, and that the Company further agrees that if I submit a request for binding arbitration, my maximum out- or pocket [*sic*] expenses for the arbitrator and the administrative cost of the

5

AAA will be an amount equal to one day's pay (if I am an exempt employee) or eight times my hourly rate of pay (if I am a non-exempt employee), and that the Company will pay all of the remaining fees and administrative costs of the arbitrator and the AAA. I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except in writing by both me and the Company."

In support of its petition to compel arbitration, defendant presented evidence that defendant is a subsidiary of Tenet. It also presented an excerpt from its employee handbook setting out the provisions of the Fair Treatment Process (FTP). The FTP included five steps for resolving employment disputes, the last of which was final and binding arbitration. It provided that the FTP applied to all employees and covered "all disputes relating to or arising out of an employee's employment with the company or the termination of employment." It stated: "Your decision to accept employment or to continue employment with the company constitutes your agreement to be bound by the FTP. Likewise, the company agrees to be bound by the FTP. This mutual agreement to arbitrate claims means that both you and the company are bound to use the FTP as the only means of resolving employment-related disputes and to forego any right either may have to a jury trial on issues covered by the FTP."

Plaintiff admitted she was employed by defendant; she did not dispute that she signed the arbitration agreement submitted by defendant. Rather, she declared that she "was under the impression" the employee acknowledgment she signed on April 23, 2007, "was a code of ethics agreement" between herself and defendant. She stated: "Since my hire in 2001 I have had to sign a code of ethics agreement every year in order to keep my employment." Plaintiff asserted she "believed [she] had no choice but to sign it in order to keep [her] employment with DMC."

Plaintiff, who bore the burden of proving any defense to enforceability of the arbitration agreement, presented no evidence of the circumstances under which she signed the agreement. There was no evidence that defendant, or anyone connected with

6

it, misrepresented the nature of the document she signed or deceived her in any way about the content of the acknowledgment form. She presented no evidence defendant prevented her from reading the document before signing it, or denied her sufficient time to read it. Apparently, she simply signed the employee acknowledgment without reading it to determine its content. A party who fails to read a contract, but objectively manifests assent by signing it, may not avoid its effect by claiming he or she did not agree to its terms. (*Stewart v. Preston Pipeline Inc*. (2005) 134 Cal.App.4th 1565, 1589 (*Stewart*).) "'It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it.' [Citations.]" (*Id.* at pp. 1588–1589.)

Plaintiff argues that the arbitration agreement is not enforceable because it is not mutually binding on plaintiff and DMC. She asserts the Employee Acknowledgment was an agreement between plaintiff and Tenet only, concerning her employment with Tenet (which did not exist), and she had no dispute with Tenet (which was not a party to her action against DMC). She points to language in the Employee Acknowledgment stating that she voluntarily agreed "to submit to final and binding arbitration any and all claims and disputes … related in any way to my employment or the termination of my employment *with Tenet*." (Italics added.) From this she concludes DMC was not a party against whom she could enforce the arbitration agreement; consequently, it was not mutually binding or mutually enforceable.

The Employee Acknowledgment, however, contains provisions mentioning Tenet and numerous other provisions concerning "the Company." The first paragraph contains an acknowledgment of the receipt of the Tenet Healthcare Corporation Employee Handbook and Standards of Conduct, which contain "important information about the Company's general personnel policies and about my privileges and obligations as an employee." The Employee Acknowledgment reflects plaintiff's understanding that her

7

"employment with the Company is not for a specified term" and "either I or the Company can terminate my employment relationship at will." The arbitration agreement reflects plaintiff's voluntary agreement to use "the Company's Fair Treatment Process" and to submit to arbitration her claims or disputes related to her employment or termination of her employment with Tenet, including claims against Tenet or its subsidiary. The agreement also states that she and "the Company" agree to forego the right to a jury trial, and will mutually choose the arbitrator. It states that, in exchange for plaintiff's agreement to arbitrate, "the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration."

Plaintiff conceded in her declaration that DMC was her employer. She did not dispute defendant's evidence that DMC was a subsidiary of Tenet. Although neither party submitted any provision of the agreement or the FTP that defined the term "the Company," in context, it is clear the references to "the Company" in the arbitration agreement meant plaintiff's employer, DMC. Plaintiff offers no explanation why, if the term "the Company" referred to Tenet and she was not employed by Tenet, as she contends, she signed an acknowledgment of her at will employment with Tenet.

The trial court found that "although there is an apparent agreement to arbitrate any disputes or claims that are related in any way to employment or termination of employment with Defendant medical center, other grounds exist for the revocation of such agreement." Thus, it found that an arbitration agreement existed between plaintiff and DMC, but that it was revocable, or unenforceable, because it was unconscionable. To the extent this finding was based on factual evidence, such as the identity of plaintiff's employer, it is supported by substantial evidence. To the extent it is based on interpretation of the terms of the Employee Acknowledgment and the FTP, we agree that the agreement was between plaintiff and DMC and concerned her employment with DMC, although it also included some provisions concerning disputes she might have with

8

DMC's parent, Tenet. Plaintiff's claim that the agreement lacked mutuality because DMC was not bound by it is without merit.

The trial court correctly found there was "an apparent agreement to arbitrate any disputes or claims that are related in any way to employment or termination of employment with Defendant medical center." The remaining question is whether the unconscionability of that agreement justified the trial court's refusal to enforce it.

## IV.    Unconscionability

Under California law, unconscionability is a defense against enforcement of contracts in general: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).) "Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citation.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."' [Citation.]" (*Pinnacle, supra*, 55 Cal.4th at p. 246.)

"Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on '"a sliding scale."' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the

term is unenforceable, and vice versa.' [Citation.]" (*Pinnacle, supra*, 55 Cal.App.4th at p. 247.)

### A.    Procedural unconscionability

"[P]rocedural unconscionability requires oppression or surprise. '"Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."'" [Citation.]" (*Pinnacle, supra*, 55 Cal.4th at p. 247.) "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 (*Little*).) A contract of adhesion is "'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.]" (*Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 113.) "It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." (*Serpa, supra*, 215 Cal.App.4th at p. 704.)

Plaintiff presented no evidence of the circumstances under which she signed the Employee Acknowledgment, so there was no specific evidence it was presented to her on a take-it-or-leave-it basis. The FTP, however, which plaintiff agreed to use to resolve any employment disputes, included provisions that the FTP applied to all employees and that accepting or continuing employment with defendant "constitutes your agreement to be bound by the FTP." These provisions suggest plaintiff would not have been permitted to opt out of the arbitration agreement or to negotiate terms other than those contained in the FTP. Thus, the arbitration agreement was adhesive.

Plaintiff asserts surprise was established because the Employee Acknowledgment was located on page 103 of the employee handbook and did not conspicuously advise that

it contained an arbitration provision. There is no evidence in the record demonstrating that the acknowledgment appeared on page 103 of the employee handbook. The declaration of Michele Bava, submitted by defendant in support of the petition to compel arbitration, merely states that exhibit A to her declaration is "a true and correct copy of an Employee Acknowledgment Form signed by" plaintiff. Exhibit A to her declaration consists of the one-page Employee Acknowledgment and a second one-page employee acknowledgment, which acknowledges receipt of an employee handbook supplement. Plaintiff's declaration in opposition to the petition says nothing about the form being part of the employee handbook.

The Employee Acknowledgment, as presented, is a one-page document, containing five paragraphs, with the heading "Employee Acknowledgment" at the top and an employee signature line and date at the bottom. The first three paragraphs acknowledge receipt of a copy of the employee handbook and standards of conduct, express an understanding that the employee is "expected to read, understand, familiarize [himself or herself] with and comply with the policies contained in them," and acknowledge the employment is at will. The last two paragraphs of the document set out the arbitration agreement. There is no separate heading identifying it as an arbitration agreement, and it does not appear in larger or darker typeface. It does, however, take up half of the page, immediately above plaintiff's signature.

The Employee Acknowledgment provided that the arbitration "will be conducted under the Federal Arbitration Act and the procedural rules of American Arbitration Association ('AAA')." Plaintiff asserts that the failure to furnish her a copy of the AAA procedures at the time she signed the arbitration agreement is further evidence of procedural unconscionability. Cases have held that incorporating procedural rules into the arbitration agreement without providing a copy of those rules to the employee is an aspect of procedural unconscionability. (See, e.g., *Trivedi v. Curexo Technology Corp.*

11

(2010) 189 Cal.App.4th 387, 393; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 721.) Defendant did not present the AAA rules as part of the arbitration agreement between the parties. Plaintiff, however, presented no evidence the AAA rules were not provided to her at the time she signed the arbitration agreement.

The evidence presented in the trial court, including evidence of the adhesive nature of the agreement and the lack of a prominent heading or bold print to highlight the arbitration provision itself, established at least some degree of procedural unconscionability. However, "a finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 469.) Accordingly, we must examine the agreement for substantive unconscionability.

### B.      Substantive unconscionability

Substantive unconscionability exists when the terms of an agreement are overly harsh or so one-sided as to shock the conscience. (*Pinnacle, supra*, 55 Cal.4th at p. 246.) In the employment context, substantive unconscionability may be found "when the arbitration agreement is 'one-sided' in favor of the employer without sufficient justification, for example, when 'the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration.' [Citations.]" (*Serpa, supra*, 215 Cal.App.4th at p. 703.) The arbitration agreement provided that both plaintiff and defendant agreed to arbitrate their claims against the other. It stated: "I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration." The FTP reiterated that both parties agreed to be bound by the FTP "as the only means of resolving employment-related disputes" and to waive their right to a jury trial of those disputes. The only claims excluded from the arbitration agreement were those listed in

12

the "Excluded Issues" section of the FTP: "Workers' Compensation Claims, any claim involving the construction or application of a benefit plan covered by ERISA, and claims for unemployment benefits." Thus, the agreement was bilateral and not unfairly one-sided.

The trial court, however, found the agreement to be substantively unconscionable because of "the general nature of the terms, i.e. without specific reference to the nature and extent of discovery and that findings of fact and conclusions of law must be included in the written decision; the ambiguity surrounding the provisions concerning the right to recover attorney's fees and costs; and the absence of any provision for limited judicial review." Plaintiff had argued in her opposition to the petition to compel arbitration that the arbitration agreement was substantively unconscionable because the discovery provision lacked guidance as to exercising the arbitrator's discretion, the agreement provided that the employee was entitled to legal representation at her own expense, contrary to the statutory provision for an award of attorney fees to a successful employee plaintiff under the FEHA (Gov. Code, § 12965), and the agreement failed to provide for limited judicial review of the arbitrator's decision.

Plaintiff's contentions and the trial court's conclusions regarding what the agreement should have included and what it lacked appear to be based on *Armendariz*. In discussing an agreement to arbitrate claims involving "unwaivable statutory rights," the *Armendariz* court concluded there were 5 minimum requirements necessary in order for such an arbitration agreement to be enforceable: the agreement "is lawful if it '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.'" (*Armendariz, supra*, 24 Cal.4th at p. 102.)

13

We question whether the *Armendariz* test survives recent United States Supreme Court decisions. *Concepcion* determined "a court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable,'" nor may it enforce "state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives," including the objective of "'ensur[ing] that private arbitration agreements are enforced according to their terms.' [Citations.]" (*Concepcion, supra*, 131 S.Ct. at pp. 1747, 1748.) Refusing to enforce an arbitration agreement according to its terms because the claims involve unwaivable statutory rights and the agreement does not contain specific provisions the court believes are necessary to vindicate those statutory rights appears contrary to the decision in *Concepcion*. *Armendariz* carved out a class of claims— those involving unwaivable statutory rights— and applied a special rule to agreements to arbitrate those claims—requiring them to meet its five minimum requirements—in order for them to be enforceable. That appears to be the type of state rule *Concepcion* condemned. More recently, the decision in *American Express Co. v. Italian Colors Restaurant*, __U.S.__, 133 S.Ct. 2304, 2013 U.S. Lexis 4700, narrowed the ability of courts to invalidate arbitration agreements on the ground they inhibit or preclude vindication of statutory rights. There, the court held arbitration agreements must be "'rigorously enforce[d]' … according to their terms," even when the claims to be arbitrated allege a violation of a federal statute. (*Id*. at pp. *8–10.) The parties to an arbitration agreement sought to invalidate the agreement's prohibition of class arbitration on the ground individual arbitration of the claims would be prohibitively expensive. The court rejected application of a judge-made exception to the FAA, which permitted courts to invalidate arbitration agreements that prevented the effective vindication of a federal statutory right. (*Id*. at pp. *11–17.) It concluded the exception applied only "to prevent 'prospective waiver of a party's *right to pursue* statutory

14

remedies,'" not to prevent the economic infeasibility of proving the claim and obtaining the remedy. (*Id*. at pp. *12–13.)

Although these cases cast doubt on the continued validity of the *Armendariz* requirements for arbitration agreements that apply to claims of violation of unwaivable statutory rights, *Armendariz* has not been overruled and is not clearly abrogated by these decisions; we are still bound by it. Even if *Armendariz* remains good law, however, the arbitration agreement before us meets its requirements and therefore is not substantively unconscionable.

*Armendariz* determined that an employee who is required to arbitrate FEHA claims is entitled to sufficient discovery to vindicate those claims. (*Armendariz, supra*, 24 Cal.4th at p. 106.) "[W]hen parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim." (*Ibid*.) The court held that "the employer, by agreeing to arbitrate the FEHA claim, has already impliedly consented to such discovery. Therefore, lack of discovery is not grounds for holding a FEHA claim inarbitrable." (*Ibid*.)

The parties agreed to arbitrate according to the procedural rules of the AAA; the FTP provided that "[a]ll discovery shall be conducted in accordance with the Employment Dispute Resolution Rules of the AAA." Additionally, "[t]he arbitrator shall have the authority to order discovery sufficient to enable a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." Plaintiff has not demonstrated that the AAA discovery rules are inadequate to vindicate her FEHA rights. We note that at least one court has found the discovery provisions of those rules to be fair. (*Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1130, fn. 21.) The provision of the FTP expressly granting the arbitrator authority to order discovery also permits the arbitrator to adjust the scope of discovery to whatever is

15

necessary, in the particular case, "to enable a full and fair exploration of the issues in dispute." The provisions for discovery do not make the arbitration agreement harsh or one-sided.

The trial court also found substantive unconscionability because "findings of fact and conclusions of law must be included in the written decision." *Armendariz* concluded that "an arbitrator in a FEHA case must issue a written arbitration decision that will reveal, however briefly, the essential findings and conclusions on which the award is based." (*Armendariz, supra*, 24 Cal.4th at p. 107.) The arbitration agreement considered by the *Armendariz* court did not contain a requirement of written findings and conclusions. The court concluded, however, that "nothing in the present arbitration agreement precludes such written findings, and to the extent it applies to FEHA claims the agreement must be interpreted to provide for such findings." (*Ibid*.) The FTP requires that the arbitrator render a written decision. Nothing precludes the arbitrator from setting out findings and conclusions in the written decision. In fact, the requirement of a written decision implies that it include some explanation of the reasons for the decision. Pursuant to *Armendariz*, the arbitration agreement and FTP should be interpreted to require the essential findings and conclusions in the written decision. Consequently, the arbitration agreement is not unconscionable for failing to include a requirement that the arbitrator's written decision include the essential findings and conclusions on which the decision is based.

The trial court also based its finding of substantive unconscionability on ambiguity in the provisions regarding recovery of attorney's fees and costs. The FTP provides that plaintiff and defendant "will be responsible for the fees and costs of [their] own respective legal counsel, if any." Plaintiff contends this provision denies her the right under the FEHA to recover attorney fees from defendant if she prevails in her FEHA claims. The FTP also provides, however, that "[t]he arbitrator has the authority to award

16

any remedy that would have been available to you had you litigated the dispute in court under applicable law." Further, "no remedies that otherwise would be available to you or the company in a court of law will be forfeited by virtue of the agreement to use and be bound by the FTP." Thus, although each party is initially responsible for that party's attorney fees and costs, the arbitrator may include an award of attorney's fees and costs to one party where such an award is authorized or required by applicable law; neither party forfeits any statutory right to recover attorney fees by agreeing to arbitration. The provisions relating to attorney's fees are neither ambiguous nor one-sided. They do not support a finding of substantive unconscionability.

Finally, the trial court found the absence of any provision for limited judicial review contributed to the substantive unconscionability of the arbitration agreement. *Armendariz* did not require that an arbitration agreement applicable to statutory claims include a provision for limited judicial review. Indeed, "the fact that an arbitration agreement does not explicitly provide for judicial review is no basis for invalidating it. [Citation.]" (*Little, supra*, 29 Cal.4th at p. 1075, fn. 1.) Sections 10 and 11 of the FAA (9 U.S.C. §§ 10, 11) and sections 1286.2 and 1286.6 of the California Arbitration Act (Code Civ. Proc., §§1286.2, 1286.6) provide for limited judicial review of arbitration awards governed by their respective provisions. Nothing in the arbitration agreement denies either party the benefit of that review. Consequently, there is nothing unconscionable in the lack of a provision for review in the arbitration agreement.

We conclude that, although there were elements of procedural unconscionability in the presentation of the arbitration agreement, the terms of the agreement were not substantively unconscionable. Because both procedural and substantive unconscionability must be found in order to invalidate an arbitration agreement, the trial court erred in refusing to enforce the arbitration agreement and denying defendant's

17

petition to compel plaintiff to arbitrate her employment-related claims in accordance with the arbitration agreement.

## ***DISPOSITION***

The judgment is reversed and remanded with instructions to the trial court to vacate its order denying defendant's petition to compel arbitration and to enter a new order granting that petition and staying the litigation while the arbitration proceeding is pending.  Defendant is entitled to its costs on appeal.

_____

HILL, P. J.

WE CONCUR:


_____

WISEMAN, J.


_____

LEVY, J.