[No. H031721. Sixth Dist. Feb. 18, 2009.]

SUNNYVALE UNIFIED SCHOOL DISTRICT, Plaintiff and Respondent, v. MICHAEL JACOBS et al., Defendants and Appellants.

SUNNYVALE EDUCATION ASSOCIATION, CTA/NEA, Plaintiff and Appellant, v.
SUNNYVALE UNIFIED SCHOOL DISTRICT, Defendant and Respondent; MICHAEL JACOBS, Real Party in Interest and Appellant.

**COUNSEL**

Priscilla Winslow for Plaintiff and Appellant, for Defendants and Appellants and for Real Party in Interest and Appellant.

Miller Brown & Dannis, John R. Yeh and Donald A. Velez for Plaintiff and Respondent and for Defendant and Respondent.

OPINION

**PREMO, J.**—The question before us is whether a school district's decision not to reelect a probationary teacher is subject to arbitration under a collective bargaining agreement, where it is alleged that the decision was made in retaliation for the teacher's participation in protected activities. We conclude that, pursuant to *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 281 [52 Cal.Rptr.2d 115, 914 P.2d 193] (*Round Valley*), the decision is not subject to contractual arbitration. Where, as here, the decision is alleged to be a violation of the Educational Employment Relations Act (EERA) (Gov. Code, §§ 3540–3549.3), the remedy lies with the Public Employment Relations Board (PERB). (*Id.*, §§ 3541, 3541.3.)

## I. Background

Michael Jacobs was in his second year as a probationary teacher with plaintiff Sunnyvale Unified School District (the District) when, on March 7, 2005, the District notified him that he would not be reelected for the following school year. In so doing, the District denied Jacobs the tenure that he would have otherwise acquired at the close of his second year teaching in the District. (Ed. Code, § 44929.21, subd. (b).) Defendant Sunnyvale Education Association, CTA/NEA (the Association), the exclusive representative of certificated employees within the District, filed a grievance alleging that the District's decision was in retaliation for Jacobs's participation in Association activities. Although the allegation, if true, would be an unfair labor practice under the EERA, the Association did not pursue a charge with PERB, the administrative body created by the Legislature to "investigate unfair practice charges or alleged violations of [the EERA]." (Gov. Code, § 3541.3, subd. (i).) Rather, since the collective bargaining agreement prohibited the same conduct the EERA prohibited, the Association pursued the matter as a breach of the collective bargaining agreement. Accordingly, the dispute was adjudicated pursuant to the contractual grievance procedures which called for binding arbitration.

The District denied that its decision was retaliatory and challenged the arbitrator's power to order reinstatement. The arbitrator rejected the challenge, found that Jacobs's nonreelection was "motivated by retaliation of the District for [Jacobs's] protected rights under the Collective Bargaining Agreement and related statutes," and ordered the District to reinstate Jacobs and purge his personnel file of the 2004–2005 evaluation. The arbitrator also ordered the District to credit Jacobs with several days of personal leave and to pay him for lost wages, benefits, and the extra cost he incurred by commuting to a different job during the 2005–2006 school year.

The Association petitioned the superior court to confirm the award. The District petitioned to vacate that portion of the award ordering reinstatement. The District argued that Education Code section 44929.21, subdivision (b), gave it the absolute right to decide whether or not to reelect a probationary teacher and, under the decision in *Round Valley, supra*, 13 Cal.4th 269, the arbitrator did not have the power to order reinstatement.

The superior court accepted the District's argument. The court noted that it was "concerned with the arbitrator's finding of illegal motivation." Nevertheless, the court held that under *Round Valley*, "the award of reinstatement was not within the arbitrator's authority and that portion of the award must be vacated." In its order dated May 4, 2007, the court ruled "that the petition to partially vacate the arbitration award is granted, striking the order reinstating Michael Jacobs and that the petition to confirm the arbitration award is denied." The portion of the award granting Jacobs backpay and benefits was not expressly vacated or confirmed. The Association has appealed.

## II. *Preliminary Considerations*

### A. *Appealability*

■ We initially questioned whether the order from which the Association purports to appeal is an appealable order.[1] Code of Civil Procedure section 1294 lists the types of orders associated with arbitration that may be appealed. As pertinent here, appeal may be taken from a judgment confirming an arbitration award (Code Civ. Proc., § 1294, subd. (d)), from an order dismissing a petition to confirm, correct or vacate an award (*id.*, subd. (b)), or from an order vacating an award (unless the court has ordered rehearing) (*id.*, subd. (c)). In this case, we have an order denying the Association's petition to confirm and granting the District's petition to partially vacate the award. An order denying a petition is not the same as an order dismissing such a petition (*Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1454 [9 Cal.Rptr.2d 862]), and an order *partially* vacating is not specifically allowed by the statutes at all (see Code Civ. Proc., § 1286). Thus, neither ruling is nominally appealable.

■ The Association argues in its supplemental brief that the court's ruling was equivalent to an order vacating the award. We shall construe it as

---

[1] The parties did not address appealability in their briefs. This omission on the Association's part is a violation of California Rules of Court, rule 8.204(a)(2)(B). Attention to this rule at the outset of a case can save the parties and the court much precious time. Here, we requested and have received supplementary briefing on the point.

such. Under Code of Civil Procedure section 1286, once a petition to confirm, correct, or vacate is filed, the superior court has only four choices: It may (1) confirm the award, (2) correct the award and confirm it as corrected, (3) vacate the award, or (4) dismiss the proceedings. The order partially vacating the award neither confirmed the award nor dismissed the proceedings. And it cannot be an order correcting the award because, as pertinent here, the court may correct the award if "[t]he arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision . . . ." (*Id.*, § 1286.6, subd. (b).) The present order affected the merits of the arbitrator's decision in that it precluded any meaningful remedy. Indeed, the Association concedes as much by arguing that the order "made every other part of the award, such as purging personnel files, irrelevant" and ended any further litigation in the superior court. **(3)** If the award cannot be corrected without affecting the merits of the decision, the court must vacate the award. (*Id.*, § 1286.2, subd. (a)(4).) We conclude, therefore, that the order partially vacating the award was, in effect, an order vacating the award, which is appealable. Accordingly, we shall construe it as such and proceed to consider the merits of the appeal.

### B. *Contentions and Standard of Review*

The issue, as framed by the Association, is whether the arbitrator had the power to order Jacobs's reinstatement. There is no dispute that, as a general matter, PERB has the power to reinstate a probationary teacher who was not reelected in retaliation for his exercising his rights under the EERA. The Association maintains that since the collective bargaining agreement granted the teacher the same rights he had under the EERA, PERB would have had to defer the charge to the arbitrator for adjudication. Under those circumstances, so the Association maintains, the arbitrator has the same remedial authority PERB has. The District argues that the entire subject of nonreelection is preempted by state law and, therefore, it cannot be the subject of collective bargaining or contractual grievance and arbitration procedures.[2]

---

[2] Although the Association has not raised the issue, we acknowledge that, in general, "the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 372 [36 Cal.Rptr.2d 581, 885 P.2d 994].) Here, the arbitrator determined that he had the power to proceed under the collective bargaining agreement. The District argues that arbitration of nonreelection decisions is preempted by state law. If the District is correct, granting finality to the arbitrator's decision would be inconsistent with protecting the District's statutory rights. Thus, "exceptional circumstances" warrant judicial review in this case. (*Round Valley, supra,* 13 Cal.4th at pp. 276–277.)

The issue presents a purely legal question to which we apply the independent standard of review. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)

## III. *Discussion*

### A. *The Statutory Scheme*

■ The question presented arises at the intersection of the Education Code and the portions of the Government Code pertaining to the collective bargaining rights of public school employees. Education Code section 44929.21, subdivision (b), governs a probationary teacher's right to continued employment.[3] That section states that a probationary teacher becomes permanent if he or she is " 'reelected' " to a teaching position for a third consecutive school year. Prior to that point " '[p]robationary teachers may be nonreelected without any showing of cause, without any statement of reasons, and without any right of appeal or administrative redress.' " (*California Teachers Assn. v. Mendocino Unified School Dist.* (2001) 92 Cal.App.4th 522, 526–527 [111 Cal.Rptr.2d 879], quoting *Bellflower Education Assn. v. Bellflower Unified School Dist.* (1991) 228 Cal.App.3d 805, 808 [279 Cal.Rptr. 179].) The public school district has "the *absolute* right to decide not to reelect probationary teachers without providing cause or other procedural protections . . . ." (*Round Valley, supra,* 13 Cal.4th at p. 281, italics added.)

■ It is helpful to understand that "nonreelection" is different from "dismissal," which is the term used when a probationary teacher is terminated during the school year for unsatisfactory performance (Ed. Code, § 44948.3) or when permanent employees are terminated for cause (*id.,* §§ 44932–44947). Nonreelection is also distinct from layoffs resulting from the need to reduce the number of employees within a district. (*Id.,* § 44955 et seq.) In the case of

---

[3] Education Code section 44929.21, subdivision (b) provides: "Every employee of a school district of any type or class having an average daily attendance of 250 or more who, after having been employed by the district for two complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district.

"The governing board shall notify the employee, on or before March 15 of the employee's second complete consecutive school year of employment by the district in a position or positions requiring certification qualifications, of the decision to reelect or not reelect the employee for the next succeeding school year to the position. In the event that the governing board does not give notice pursuant to this section on or before March 15, the employee shall be deemed reelected for the next succeeding school year.

"This subdivision shall apply only to probationary employees whose probationary period commenced during the 1983–84 fiscal year or any fiscal year thereafter."

both dismissals and layoffs, the teacher has specified rights the school district must honor. On the other hand, when a school district decides not to reelect a probationary teacher and deny tenure, the district's only obligation is to give the teacher notice of its decision "on or before March 15 of the employee's second complete consecutive school year of employment." (*Id.*, § 44929.21, subd. (b).) This seemingly draconian provision represents the Legislature's balance between the rights of the teacher and the overall purpose of the system of public education, which is to educate the young. (*Round Valley, supra*, 13 Cal.4th at p. 278.)

The other pertinent statutory scheme is the EERA, which governs collective bargaining in public education. (Gov. Code, §§ 3540–3549.3.) The purpose of the EERA is "to promote the improvement of personnel management and employer-employee relations within the public school systems . . . by providing a uniform basis for recognizing the right of public school employees to join organizations of their own choice, to be represented by the organizations in their professional and employment relationships with public school employers, to select one employee organization as the exclusive representative of the employees in an appropriate unit, and to afford certificated employees a voice in the formulation of educational policy." (Gov. Code, § 3540.)

■ Under the EERA, the public school employer may not "[i]mpose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by [the EERA]." (Gov. Code, § 3543.5, subd. (a).) Among those rights is "the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations." (*Id.*, § 3543, subd. (a).)

■ Although employers must "meet and negotiate with and only with representatives of employee organizations . . ." (Gov. Code, § 3543.3), the scope of representation is limited. Collective bargaining may encompass "matters relating to wages, hours of employment, and other terms and conditions of employment" (*id.*, § 3543.2, subd. (a)).[4] " '[T]erms and conditions of employment' " is defined as "health and welfare benefits . . . , leave,

---

[4] Government Code section 3543.2, subdivision (a), provides in full: "The scope of representation shall be limited to matters relating to wages, hours of employment, and other terms and conditions of employment. 'Terms and conditions of employment' mean health and welfare benefits as defined by Section 53200, leave, transfer and reassignment policies, safety conditions of employment, class size, procedures to be used for the evaluation of employees, organizational security pursuant to Section 3546, procedures for processing grievances pursuant to Sections 3548.5, 3548.6, 3548.7, and 3548.8, the layoff of probationary certificated

transfer and reassignment policies, safety conditions of employment, class size, procedures to be used for the evaluation of employees, organizational security . . . , procedures for processing grievances . . . , the layoff of probationary [teachers] . . . , and alternative compensation or benefits for employees adversely affected by pension limitations . . . ." (*Ibid.*) "All matters not specifically enumerated are reserved to the public school employer and may not be a subject of meeting and negotiating . . . ." (*Ibid.*)

■ Finally, the EERA specifies that it "shall not supersede other provisions of the Education Code and the rules and regulations of public school employers which establish and regulate tenure . . . ." (Gov. Code, § 3540.)

### B. *The Collective Bargaining Agreement*

The Association filed its grievance under article IV of the collective bargaining agreement, which set forth substantive rights and duties imported from the EERA. Article IV, section 4.1.2 provided: "The [District] and Association recognize the right of employees to form, join and participate in the activities of an organization . . . ." And article IV, section 4.1.3 stated, "The [District] agrees not to impose or threaten to impose reprisals on employees or the Association, discriminate against employees or otherwise interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this Agreement." Article IV does not specifically refer to nonreelection.

Article VII of the collective bargaining agreement contained the grievance procedure. Under article VII, when an employee has been aggrieved by an alleged breach of the collective bargaining agreement, he or she is to bring the grievance first to the school principal or the employee's immediate supervisor, and then to the superintendent. If the grievance is not resolved at these two preliminary levels, binding arbitration before a single neutral arbitrator is authorized.

school district employees, pursuant to Section 44959.5 of the Education Code, and alternative compensation or benefits for employees adversely affected by pension limitations pursuant to Section 22316 of the Education Code, to the extent deemed reasonable and without violating the intent and purposes of Section 415 of the Internal Revenue Code. In addition, the exclusive representative of certificated personnel has the right to consult on the definition of educational objectives, the determination of the content of courses and curriculum, and the selection of textbooks to the extent such matters are within the discretion of the public school employer under the law. All matters not specifically enumerated are reserved to the public school employer and may not be a subject of meeting and negotiating, provided that nothing herein may be construed to limit the right of the public school employer to consult with any employees or employee organization on any matter outside the scope of representation."

C. *Analysis*

The question is whether a school district's allegedly retaliatory decision not to reelect a probationary teacher may be subject to contractual arbitration procedures. *Round Valley, supra,* 13 Cal.4th 269, is dispositive of the question. *Round Valley* involved a collective bargaining agreement that required a school district to give notice and a statement of reasons whenever it decided not to reelect a probationary teacher. The agreement also allowed the teacher 15 days to appeal the decision. (*Id.* at p. 273.) When the school district notified a probationary teacher of his nonreelection without giving him reasons for the decision or the opportunity to appeal, the teachers' association filed a grievance, which was ultimately arbitrated. The arbitrator found that the district had violated the agreement and ordered the district to reconsider its decision. (*Ibid.*) The Supreme Court concluded that the nonre-election decision was not subject to collective bargaining and, therefore, that the arbitrator had exceeded his powers by giving effect to provisions in the collective bargaining agreement that conflicted with and were superseded by the statutory scheme. (*Id.* at pp. 274, 287–288.)

■ *Round Valley* observed that the EERA implicitly exempted the nonre-election decision from the permissible scope of collective bargaining by not listing it among the matters subject to bargaining under Government Code section 3543.2, subdivision (a). (*Round Valley, supra,* 13 Cal.4th at p. 283.) Although nonreelection was not expressly excluded, the court held that this did not allow the parties to negotiate greater protections for probationary teachers than that afforded by the statutes. The Legislature had made it clear that collective bargaining rights granted by the EERA may not supersede the provisions of the Education Code. (Gov. Code, § 3540.) ■ Since Education Code section 44929.21, subdivision (b), demonstrated a clear legislative determination that the due process protections enjoyed by perma-nent teachers do not apply to probationary teachers, a collective bargaining provision that conflicted with this legislative scheme also conflicted with Government Code section 3540. (*Round Valley, supra,* at pp. 284–285.)

■ The Supreme Court concluded: "When the Legislature vests exclu-sive discretion in a body to determine the scope of procedural protections to specific employees, the subject matter may not be the subject of either mandatory or permissive collective bargaining. [¶] We conclude [Education Code] section 44929.21[, subdivision] (b) preempts collective bargaining agreements as to causes and procedures governing the reelection of proba-tionary teachers. The statutory scheme governing the proper subjects for collective bargaining (Gov. Code, § 3540 et seq.) and the reelection of probationary teachers ([Ed. Code,] § 44929.21[, subd.] (b)) makes it clear that a school district's decision not to reelect a probationary teacher after the

second year of employment is vested exclusively in the district and may not be the subject of collective bargaining." (*Round Valley, supra*, 13 Cal.4th at p. 287.)

The Association argues that *Round Valley* does not apply here because article IV of the collective bargaining agreement imposed no procedural requirements, such as the notice and appeal rights contained in the collective bargaining agreement in *Round Valley*, that directly conflict with the Education Code. The collective bargaining agreement in this case merely imported substantive rights from the EERA. But in our view, the Association reads *Round Valley* too narrowly. While the breach that precipitated the dispute in *Round Valley* involved express procedural protections that were inconsistent with the statutory requirements, *Round Valley*'s holding was that the "decision not to reelect" could not be the subject of collective bargaining. (*Round Valley, supra*, 13 Cal.4th at p. 287.) The holding is not limited to procedural requirements for nonreelection; it applies to the "decision" as a whole. Indeed, the court specified that the Education Code preempted collective bargaining agreements "as to *causes and procedures*" governing the reelection decision. (*Id.* at p. 287, italics added.)

The present case illustrates why the Supreme Court could not have limited its holding as the Association maintains. Even though article IV of the collective bargaining agreement does not contain specific procedural protections related to the nonreelection decision, under the Association's interpretation, a teacher who challenges a nonreelection as a violation of his or her substantive rights under article IV would have the right to a hearing before a neutral arbitrator. In effect, therefore, the Association's interpretation grants the probationary teacher a grievance procedure that is prohibited by the Education Code.[5]

██ In sum, as *Round Valley* specifically held, a school district's decision not to reelect a probationary teacher cannot be the subject of collective bargaining. It follows that the decision cannot be challenged as a breach of the collective bargaining agreement. The decision is outside the scope of the agreement, as a matter of law.

The Association insists that a collective bargaining agreement may lawfully incorporate statutory protections for employees. The District does not challenge this assertion as a general principle. Indeed, as PERB once held, "the

---

[5] Indeed, the collective bargaining agreement itself acknowledges that nonreelection is not subject to contractual grievance procedures. Article XX, section 20.4.2 of the collective bargaining agreement gives a probationary employee who is not reelected the right, upon request, to written reasons for his or her nonreelection. Section 20.4.3 specifies, however, that the reasons given "shall not be subject to the grievance procedure of this Agreement, nor to judicial review, except as may be available to employees under the Education Code."

requirement to negotiate the inclusion of contractual provisions prohibiting discrimination merely reiterates management's existing obligations under state and federal law and, therefore, does not invade any managerial prerogative." (*San Mateo City School Dist.* (1984) PERB Dec. No. 375 [8 PERC ¶ 15021, p. 135].) But as PERB made clear in that case, proposals relating to discrimination may be included because they "have a direct relationship to a whole range of *enumerated subjects of bargaining.* Discriminatory practices may affect wages, transfer, reassignment and disciplinary policies, and other areas of bargaining *enumerated* in [Government Code] section 3543.2 . . . ." (*Ibid.*, italics added.) We express no opinion as to the validity of article IV, sections 4.1.2 and 4.1.3 of the collective bargaining agreement, to the extent they prohibit discrimination in any of the areas enumerated as permissible subjects of bargaining. We merely hold that these sections may not be applied to the nonreelection decision, which is not a permissible bargaining subject.

 That is not to say that a district's power to deny tenure for any lawful reason insulates it from scrutiny when it allegedly has done so for an unlawful discriminatory reason. (*McFarland Unified School Dist. v. Public Employment Relations Bd.* (1991) 228 Cal.App.3d 166, 169 [11 Cal.Rptr.2d 405, 279 Cal.Rptr. 26] (*McFarland*).) But that scrutiny cannot be imposed by the collective bargaining agreement. Where a teacher complains that his or her nonreelection was in retaliation for his or her associational activities, the appropriate remedy is found in the EERA. (Gov. Code, §§ 3540–3549.3.) *McFarland* makes this clear. The underlying facts of *McFarland* are on all fours with this case but the procedural posture was entirely different. A teachers' organization alleged that a school district had discriminated against a probationary teacher by not reelecting her in retaliation for her exercising her rights as a member of the teachers' organization. (*McFarland, supra,* at p. 168.) The teachers' organization pursued the allegation as a violation of the EERA and lodged a charge with PERB, which has the express legislative authority to investigate unfair practice charges and violations of the EERA. (Gov. Code, § 3541.3, subd. (i).) PERB concluded that the district's action was retaliatory and directed the district to reinstate the teacher. The appellate court upheld the decision, pointing out that, although the district was entitled to deny tenure for any lawful reason, it was not insulated "from the scrutiny of the PERB" when a complaint alleged that tenure was denied in retaliation for the exercise of a protected right. (*McFarland, supra,* at p. 169.) The EERA gave PERB "exclusive jurisdiction" to determine whether a charge of unfair labor practice is justified. (Gov. Code, § 3541.5.)[6] The EERA also specifically authorized PERB "to issue a decision and order directing an offending party to cease and desist from the unfair practice and to take such

---

[6] Government Code section 3541.5, provides in full:
"The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within

affirmative action, *including but not limited to the reinstatement of employees* with or without back pay, as will effectuate the policies of [the EERA]." (Gov. Code, § 3541.5, subd. (c), italics added.)

 *McFarland* concluded that PERB had authority to order reinstatement and the fact that the teacher would automatically obtain tenure as a result merely gave effect to the determination that she would not have been denied tenure but for the exercise of her protected rights. (*McFarland, supra,* 228 Cal.App.3d at p. 169.) In short, *McFarland* teaches that where a probationary teacher alleges that his or her nonreelection was in violation of the EERA, PERB has the express statutory authority to adjudicate the allegation and to order reinstatement if warranted. Nothing in *McFarland* extends PERB's authority to an arbitrator.

 The Association recognizes that *McFarland* does not expressly apply to the arbitration context. The Association maintains, however, that the deferral doctrine operates to extend PERB's authority to the arbitrator. Where an unfair practice charge is also alleged to be a breach of the collective bargaining agreement, the deferral doctrine requires PERB to defer issuing a complaint until the parties have exhausted the contractual grievance process. (Gov. Code, § 3541.5, subd. (a)(2).) The Association argues that in such a case, the arbitrator acquires PERB's remedial authority and, therefore, that

the exclusive jurisdiction of the board. Procedures for investigating, hearing, and deciding these cases shall be devised and promulgated by the board and shall include all of the following:

"(a) Any employee, employee organization, or employer shall have the right to file an unfair practice charge, except that the board shall not do either of the following:

"(1) Issue a complaint in respect of any charge based upon an alleged unfair practice occurring more than six months prior to the filing of the charge.

"(2) Issue a complaint against conduct also prohibited by the provisions of the agreement between the parties until the grievance machinery of the agreement, if it exists and covers the matter at issue, has been exhausted, either by settlement or binding arbitration. However, when the charging party demonstrates that resort to contract grievance procedure would be futile, exhaustion shall not be necessary. The board shall have discretionary jurisdiction to review the settlement or arbitration award reached pursuant to the grievance machinery solely for the purpose of determining whether it is repugnant to the purposes of this chapter. If the board finds that the settlement or arbitration award is repugnant to the purposes of this chapter, it shall issue a complaint on the basis of a timely filed charge, and hear and decide the case on the merits. Otherwise, it shall dismiss the charge. The board shall, in determining whether the charge was timely filed, consider the six-month limitation set forth in this subdivision to have been tolled during the time it took the charging party to exhaust the grievance machinery.

"(b) The board shall not have the authority to enforce agreements between the parties, and shall not issue a complaint on any charge based on alleged violation of any agreement that would not also constitute an unfair practice under this chapter.

"(c) The board shall have the power to issue a decision and order directing an offending party to cease and desist from the unfair practice and to take such affirmative action, including but not limited to the reinstatement of employees with or without back pay, as will effectuate the policies of this chapter."

the arbitrator in this case had the power to order reinstatement. But the argument presumes that this is a deferral case. It is not. Since the nonreelection decision may not be the subject of collective bargaining, the collective bargaining agreement may not be read to apply to that decision; there is no contractual provision to which PERB can defer.

We acknowledge that the record indicates that PERB deferred issuing a complaint in a case against the District in 1998 because PERB had concluded that *Round Valley* did not preclude arbitration of a grievance identical to the one before us. While we typically accord great weight and respect to the administrative construction of statutes, the final meaning of the law rests with the court. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Based upon the plain language of the statutes and the Supreme Court's opinion in *Round Valley, supra,* 13 Cal.4th 269, we conclude that the Association's challenge to the District's nonreelection decision may not be made by way of a grievance alleging breach of the collective bargaining agreement. Rather, the appropriate remedy would have been to lodge an unfair practice charge with PERB. Accordingly, the arbitrator acted in excess of his powers in adjudicating the issue and ordering reinstatement.

*Baker Valley Teachers Assn. v. Baker Valley Unified School Dist.* (Dec. 19, 2008) PERB Dec. No. 1993, a recent case cited by the Association at oral argument, does not alter our conclusion. In a factual situation analogous to that in *McFarland,* the school district argued that the Education Code provided the exclusive procedure for evaluating its proffered reasons for not renewing a teacher's contract and, consequently, that PERB had no power to "second-guess" those reasons. (*Baker Valley,* at p. 14.) PERB disagreed, clarifying, "PERB does not determine whether the employer had cause to discipline or terminate the employee. [Citation.] Rather, PERB weighs the employer's justifications for the adverse [employment] action against the evidence of the employer's retaliatory motive. Thus, PERB's inquiry is not whether the employer had a lawful reason for the action but whether it took the action for an unlawful reason." (*Ibid.*) The Association maintains that this passage makes it clear that there is a difference between cause for nonreelection and dismissal for an illegal reason. True, there may be a difference. But that difference is what allows PERB to adjudicate an unfair practice claim in the nonreelection context. It says nothing about the arbitrator's power, which is derived solely from the collective bargaining agreement. Since the nonreelection decision may not be the subject of collective bargaining, the arbitrator has no jurisdiction over a nonreelection dispute.

## IV. *Disposition*

The order vacating the award is affirmed.

The parties shall bear their own costs on appeal.

Rushing, P. J., and Elia, J., concurred.