[No. E049209. Fourth Dist., Div. Two. Oct. 15, 2010.]

SUNLINE TRANSIT AGENCY, Plaintiff and Appellant, v.
AMALGAMATED TRANSIT UNION, LOCAL 1277, Defendant and
Appellant;
RAFAEL NAVARETTE, Defendant and Respondent.

294

**COUNSEL**

Lisa Garvin Copeland for Plaintiff and Appellant.

Neyhart, Anderson, Flynn & Grosboll, William J. Flynn and Eileen M. Bissen for Defendant and Appellant and for Defendant and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.**—Plaintiff SunLine Transit Agency (SunLine) appeals from a judgment entered after the trial court denied SunLine's petition to vacate a contractual arbitration award, and granted a petition to confirm the award, brought by SunLine's employee, Rafael Navarette (Navarette), and Amalgamated Transit Union, Local 1277 (the Union), referred to collectively as respondents. In the award, the arbitrator found that SunLine terminated Navarette without good cause in violation of the collective bargaining agreement, also known as a memorandum of understanding (the MOU). SunLine was thus ordered to reinstate Navarette as a motor coach operator

(bus driver), with backpay, less interim earnings and vocational rehabilitation compensation.

SunLine contends the arbitration award should be vacated on the grounds the award contravenes public policy under the Workers' Compensation Act (WCA) (Lab. Code, § 3600 et seq.) and the arbitrator exceeded his powers under the MOU (Code Civ. Proc., § 1286.2, subd. (a)(4)).[1] SunLine also argues that respondents were estopped from using arbitration as a competing forum to contest workers' compensation findings and remedies.

We conclude the trial court properly denied SunLine's motion to vacate or modify the arbitration award and appropriately confirmed the award, as corrected. The award neither invades the exclusive jurisdiction of the Workers' Compensation Appeals Board (WCAB) nor was entered in excess of the arbitrator's powers under the MOU.

The Union's cross-appeal challenges the trial court's insertion in the judgment of language declaring that Navarette "is judicially estopped later to claim continuing permanent disability benefits in the pending Workers' Compensation case." The Union contends the trial court did not have authority to issue a judgment containing this additional language, which was not in conformity with the arbitration award. We agree, and order the language stricken from the judgment. In all other regards, the judgment confirming the arbitration award, as corrected, is affirmed.

## 1.   Facts and Procedural Background

Navarette began working for SunLine as a bus driver in April 1997. During his employment with SunLine, Navarette sustained numerous industrial injuries and submitted six separate workers' compensation claims, including three in 1999, one in 2002 and two in 2003.

On February 19, 2006, Navarette was injured while conducting a pretrip inspection of his bus. Navarette sustained injuries to his head, neck, back, shoulders, right wrist, right leg and right ankle. As a consequence, Navarette was placed on an industrial leave and filed a workers' compensation claim.

In September 2006, Navarette and SunLine agreed to designate Dr. Richard I. Woods (Dr. Woods) as an agreed medical examiner (AME), who was to

---

[1] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

examine Navarette and evaluate his disability and need for medical care under the WCA.

In November 2007, Dr. Woods examined Navarette and reviewed his medical records related to his injuries sustained on February 19, 2006, as well as Navarette's medical records related to his previous industrial injuries and workers' compensation claims.

On February 15, 2008, Navarette's treating physician, Dr. Douglas J. Roger (Dr. Roger), gave Navarette a "return to work" slip, which stated Navarette was temporarily partially disabled and able to return to modified work as a bus driver on February 18, 2008. The return to work slip included a restriction against lifting more than 30 pounds. Because of this restriction, SunLine refused to allow Navarette to return to work. SunLine notified Navarette that "as of February 18, 2008, per the MOU Article G-18: Section 3 (k) your employment with SunLine Transit Agency terminates."

The MOU mentioned in the notice of termination referred to a collective bargaining agreement, which SunLine and its employees' union entered into, effective from April 1, 2006, through March 31, 2009. The MOU contained written terms and conditions of employment relating to SunLine's employees, including its bus drivers. The MOU specified employee grievance procedures and provided for arbitration in the event a dispute arose concerning interpretation or application of the MOU terms.

Article G-18, section 3 k) of the MOU, cited in SunLine's employment termination notice as the ground for terminating Navarette, stated: "Employees shall lose all seniority rights and employment shall cease for any of the following reasons: [¶] . . . [¶] k) If an employee is absent from work for an industrial illness or injury in excess of two (2) years." As of February 19, 2008, Navarette was absent from work at least two years due to his industrial injury sustained on February 19, 2006.

When SunLine and the Union met on February 19, 2008, to discuss Navarette's employment termination grievance, SunLine agreed to send Dr. Roger a copy of Navarette's job description, along with an inquiry as to whether Navarette would be able to perform the essential duties of his job based on the job description. In return, the Union agreed not to appeal to the second grievance level under the MOU, until Dr. Roger responded to the inquiry. Navarette's job description, which SunLine provided Dr. Roger, included the following:

"Primary Duties, Responsibilities, Job Outcomes

"4. Assists passengers as necessary and deals courteously and effectively with passengers, the public and fellow employees at all times.

"5. Calls out all major intersections as prescribed by ADA and company policies; assists special passengers as instructed. [¶] . . . [¶]

"7. Performs related duties as necessary or special assignments as directed."

Navarette's job description also included the following:

"Working Conditions

"Walking, reading, writing, bending, stooping, speaking, hearing and repetitive motion of wrist, hands, leg neck and head; prolonged sitting.

"Ability to operate wheelchair lift and maneuver wheelchairs and their vehicles used by disabled to accommodate."

There were no lifting requirements listed in the job description.

In response to SunLine's inquiry regarding Navarette's ability to return to work, Dr. Roger stated, "OK to return to work as a motor coach operator."

By letter dated February 28, 2008, SunLine notified Navarette that Dr. Roger confirmed that the same work restrictions applied and therefore SunLine's previous decision to terminate Navarette based on MOU article G-18, section 3 k) still "stands." SunLine further notified Navarette that a grievance hearing was set pursuant to the MOU, during which Navarette could present his case.

On March 11, 2008, Dr. Roger provided a disability status report confirming that Navarette was able to return to his job as a bus driver on March 11, 2008, without any restrictions. Dr. Roger noted he was awaiting the AME report.

Meanwhile, on March 5, 2008, Dr. Woods completed the AME report. The report was sent to the parties on March 13, 2008. Dr. Woods concluded in the report that Navarette had a permanent disability and his condition was stable and not likely to improve. Dr. Woods further concluded that, based on Navarette's stated job duties and due to accommodations and work restrictions currently imposed, Navarette was not capable of performing his usual and customary duties. He therefore was eligible for vocational rehabilitation.

SunLine conducted a hearing on Navarette's termination grievance on March 11, 2008, and on March 18, 2008, SunLine notified Navarette that, based on Dr. Woods's statement that Navarette was unable to return to work without restrictions, SunLine's decision to terminate his employment as of February 18, 2008, in accordance with article G-18, section 3 k) of the MOU, "stands."

In response, the Union notified SunLine it was appealing the first level decision and was requesting that the matter proceed to the second level under the MOU. On April 3, 2008, SunLine conducted a second-level grievance hearing on Navarette's termination grievance, and informed him by letter dated April 8, 2008, that the termination decision "stands" pursuant to article G-18, section 3 k) of the MOU. SunLine also noted that Navarette had been provided with the AME report stating that he was unable to return to his job and was eligible for vocational rehabilitation under the WCA.

The Union, on Navarette's behalf, filed a demand for arbitration appealing from SunLine's final decision on April 8, 2008. Arbitration under the MOU was to be conducted by a tripartite arbitration board, consisting of one arbitrator selected by the Union, one arbitrator selected by SunLine, and a third, neutral arbitrator selected from a list of arbitrators listed in the MOU. Because the votes of the arbitrators selected by SunLine and by the Union offset each other, the third, neutral arbitrator (the arbitrator) issued the controlling written arbitration decision, which SunLine challenges in this appeal (the arbitration award).

On September 5, 2008, Dr. Woods provided a supplemental AME report, stating he had reviewed additional medical records but his opinions in the original AME report remained the same.

On November 10, 2008, Navarette's termination grievance was arbitrated. The parties agreed that the issue to be arbitrated was the following: "Was the grievant terminated for just/proper cause? [¶] If not, what is the appropriate remedy?" During the hearing, SunLine and the Union presented evidence. Due to Dr. Roger issuing on November 7, 2008, a release without restrictions, the hearing was continued to allow Dr. Roger to testify as to Navarette's current physical condition.

In December, the parties agreed to submit the case without Dr. Roger's testimony, conditional upon the Union withdrawing evidence of Dr. Roger's November release without restrictions. SunLine objected to the November

release because it occurred after expiration of the two-year termination period and SunLine did not have an opportunity to cross-examine Dr. Roger. In addition, SunLine argued the November 2008 release conflicted with the WCAB's jurisdiction over Navarette's industrial injury claims.

SunLine's position at arbitration was that, because of the 30-pound lifting restriction, Navarette was incapable of performing his job as a bus driver because he could not assist wheelchair passengers with their wheelchairs on the bus.

The Union argued that SunLine did not have good cause to preclude Navarette from returning to work on February 18, 2008, and, in turn, did not have good cause to terminate him since there was no evidence Navarette had any physical limitations that prevented him from driving a bus.

The arbitrator stated in his detailed arbitration decision, issued on February 10, 2009, that SunLine's initial decision to preclude Navarette from returning to work on February 18, 2008, and thereafter to terminate him, was based solely on the 30-pound lifting restriction. The arbitrator concluded this did not constitute good cause since SunLine failed to establish any specific lifting requirements, and testimony disclosed that SunLine instructed its bus drivers not to lift anything they felt they could not lift and to seek assistance when necessary. The arbitrator did not find the AME report persuasive because it assumed Navarette's job required lifting, whereas the job description did not include lifting as a requirement. Lifting wheelchairs was not a required job duty and a bus driver was also not required to lift a passenger who fell out of a wheelchair on the bus.

The arbitrator further explained that he did not find persuasive Dr. Woods's opinion that Navarette was incapable of performing his duties due to lifting restrictions, because Dr. Woods erroneously assumed Navarette's job required heavy lifting and other strenuous physical activity, but there was no evidence that bus drivers were required to engage in any heavy lifting, overhead reaching, repetitive bending and stooping, or forceful pushing, pulling or repetitive work above the shoulder level.

With regard to SunLine's contention that the arbitrator improperly decided matters subject to the WCAB's exclusive jurisdiction, the arbitrator stated in his decision: "In making this decision, I have not made any determination as to the principles under workers' compensation statutes. More specifically, I have given no consideration to the terms 'whole person impairments' and 'impairments' under workers' compensation law. As with my analysis with respect to the employer's contentions dealing with the application of the ADA, other statutes and regulations, I have considered the evidence in this

record solely in relation to their application to the terms of the collective bargaining agreement—and more specifically whether proper and just cause existed to terminate the grievant. [¶] Whether the grievant had an impairment under workers' compensation law and whatever workers' compensation might find in terms of percentages of impairment is not necessarily a factor in my consideration—other than I note that the grievant does not have anywhere near a 100% 'whole person impairment' rating."

The arbitrator thus *"found the union's arguments persuasive that the employer failed to demonstrate that the grievant was incapable of performing his duties as of February 18, 2008.* To the contrary, *I find that the weight of the evidence demonstrates that the grievant was and is capable of performing the duties and that he was capable before his two year industrial leave expired."*

Based on these findings, the arbitrator concluded that SunLine did not have proper and just cause to terminate Navarette. Therefore, his termination violated the MOU and Navarette was entitled to reinstatement to his former position, restoration of all lost benefits due to termination, and reimbursement for all backpay, less interim earnings and vocational rehabilitation compensation.

In footnote 6, the arbitrator added that, "Parenthetically, the grievant's reinstatement will be without restriction inasmuch as on November 7, 2008 Dr. Roger issued a release without restrictions."

On March 26, 2009, SunLine filed in the superior court a petition to vacate the arbitration award or, alternatively, to correct it by striking footnote 6. SunLine sought to vacate the award under section 1286.2, subdivision (a)(4), on the ground the arbitrator exceeded his powers by attacking the foundation, findings and opinions of the AME report, deciding medical- and disability-related issues not submitted for arbitration, violating public policy under the WCA, violating SunLine's statutory rights under the WCA, and issuing an award subjecting SunLine to remedies and findings conflicting with those in the workers' compensation forum. Respondents filed a response and a cross-petition to confirm the arbitration award.

On June 5, 2009, the trial court heard SunLine's and the Union's petitions. During the hearing, the trial court noted, "It appears the Workers' Compensation case is still pending, and to the extent that Mr. Navarette now claims he is able to work, he is judicially estopped later to claim continuing permanent disability benefits." The court added that "medical conditions are evolving, and a finding of permanent disability in November of 2007 does not preclude a different finding later." Respondents objected to the court declaring

Navarette judicially estopped from continuing to claim permanent disability because he was being reinstated in his job. SunLine argued Navarette could not be reinstated in the arbitration proceedings and then claim permanent disability in his pending workers' compensation case, since this would result in mutually inconsistent remedies.

On August 10, 2009, the trial court entered an order denying SunLine's petition to vacate the arbitration award, but granting modification of the award by striking footnote 6. The court further granted respondents' petition to confirm the arbitration award, as corrected.

On August 13, 2009, the court executed the proposed judgment, prepared by SunLine, which stated the arbitration award was confirmed, as corrected to delete footnote 6. The following additional language, which was not included in the court order, was added to the judgment: ". . . Navarette is judicially estopped later to claim continuing permanent disability benefits in the pending Workers' Compensation case."

SunLine appeals the judgment and the Union cross-appeals.

## 2. Standard of Review of Arbitration Awards

■ In reviewing the arbitration award and trial court judgment, we apply the following principles: "California public policy supports the use of private arbitration to resolve disputes. [Citations.] To promote this alternative means of dispute resolution, the law minimizes judicial intervention in the proceedings, in part, by the doctrine of arbitral finality. [Citation.] Thus, 'the general rule [is] that "an arbitrator's decision cannot be reviewed for errors of fact or law." [Citation.]' [Citation.] '[B]oth because it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, "The merits of the controversy between the parties are not subject to judicial review." [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.]' [Citation.]" (*Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 407–408 [29 Cal.Rptr.3d 881] (*Jones*).)

It is thus " 'well settled that the scope of judicial review of arbitration awards is extremely narrow. . . . [W]ith limited exceptions, ". . . an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." [Citation.]' [Citation.] [¶] Judicial review of private arbitration awards is ordinarily limited [under section 1286.2] to

the statutory grounds for vacating an award (Code Civ. Proc., § 1286.2) and correcting an award (Code Civ. Proc., § 1286.6.) [Citation.]" (*City of Palo Alto v. Service Employees Internat. Union* (1999) 77 Cal.App.4th 327, 333–334 [91 Cal.Rptr.2d 500], citations omitted.)

In relatively rare instances the court may also vacate or correct an arbitration award, "[w]here 'according finality to the arbitrator's decision would be incompatible with the protection of a statutory right' or where the award contravenes 'an explicit legislative expression of public policy.' [Citations.]" (*City of Palo Alto v. Service Employees Internat. Union, supra,* 77 Cal.App.4th at p. 334.) "Absent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 32 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

### 3. Exceptions Based on Violation of a Statute or Public Policy

■ Vacating an arbitration award based on public policy or a statutory right requires an explicit legislative expression of a public policy violated by the award or a conflict with a statutory scheme. Otherwise, courts are reluctant to invalidate an arbitrator's award because "the Legislature has already expressed its strong support for private arbitration and the finality of arbitral awards in title 9 of the Code of Civil Procedure. (§ 1280 et seq.) Absent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at p. 32.)

SunLine contends this court should independently review the award and vacate it because the award invades SunLine's statutory rights under the WCA and the overriding public policy of the WCA. We disagree. The arbitration award, in which SunLine was ordered to reinstate Navarette in his job and reimburse him for backpay and benefits, less interim earnings and vocational rehabilitation compensation, does not conflict with workers' compensation jurisdiction over Navarette's separate workers' compensation claims.

■ Generally, under the workers' compensation doctrine, when an injured employee is entitled to recover workers' compensation benefits, those benefits constitute the employee's exclusive remedy against the employer and his or her fellow employees. (Lab. Code, §§ 3600, 3601, 3602.) "[T]he basis for the exclusivity rule in workers' compensation law is the 'presumed

"compensation bargain," pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' [Citation.]" (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 708 [30 Cal.Rptr.2d 18, 872 P.2d 559] (*Fermino*), quoting *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 [276 Cal.Rptr. 303, 801 P.2d 1054].)

The exclusivity rule does not apply when the employer's conduct falls outside the scope of the compensation bargain. (*Fermino, supra*, 7 Cal.4th at pp. 706–707; *Shoemaker v. Myers, supra*, 52 Cal.3d at pp. 15–16.) The exclusivity rule only applies when there is a personal physical injury or death. (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 813 [102 Cal.Rptr.2d 562, 14 P.3d 234] (*Vacanti*).)

█ Summarizing these principles, the California Supreme Court, in *Fermino, supra*, 7 Cal.4th at pages 713–714, stated that there is ". . . a tripartite system for classifying injuries arising in the course of employment. First, there are injuries caused by employer negligence or without employer fault that are compensated at the normal rate under the workers' compensation system. Second, there are injuries caused by ordinary employer conduct that intentionally, knowingly or recklessly harms an employee, for which the employee may be entitled to extra compensation [within the workers' compensation system]. Third, there are certain types of intentional employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought."

Here, the essence of the wrong was a violation of an employment right, wrongful termination without good cause, not the occurrence of a personal physical injury. Determination of the issue arbitrated did not require the arbitrator to make findings as to SunLine's liability for Navarette's industrial personal injuries or as to compensation for such injuries. Rather, the issue arbitrated concerned whether SunLine wrongfully terminated Navarette based on article G-18, section 3 k) of the MOU, which allows SunLine to terminate an employee who has been "absent from work for an industrial illness or injury in excess of two (2) years." It was undisputed Navarette was absent from work for more than two years, Navarette suffered an industrial injury on February 19, 2006, and remained off work for more than two years.

The dispute in this case concerns whether there was good cause for SunLine to refuse to allow Navarette to return to work before expiration of the two year period based on the lifting restriction. In making this determination, the

arbitrator was not required to make factual findings on the nature and extent of Navarette's disabilities or his workers' compensation remedies. Whether the lifting restriction was a valid ground turned on whether Navarette could perform his job duties in spite of the 30-pound lifting restriction. If he could, there was no valid basis for SunLine refusing to allow Navarette to return to work, and Navarette's termination was not based on good cause because it was due to SunLine unjustifiably preventing him from returning to work within two years.

The workers' compensation exclusivity rule thus does not apply because SunLine's act of refusing to allow Navarette to return to work on February 15, 2008, fell outside the scope of the workers' compensation bargain. (*Fermino, supra,* 7 Cal.4th at pp. 706–707; *Shoemaker v. Myers, supra,* 52 Cal.3d 1, 15–16.) Whether there was good cause for precluding Navarette from returning to work was the issue to be decided by arbitration, and was not encompassed by the WCA.

In *Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 673 [132 Cal.Rptr.2d 207] (*LAMTA*), which is factually similar to the instant case, the court rejected essentially the same argument SunLine raises, that the WCAB had exclusive jurisdiction over the wrongful termination matter. The court in *LAMTA* held that the workers' compensation exclusive remedy doctrine did not preclude arbitration, under the collective bargaining agreement, of an employee's grievance, in which the employee sought to return to work after recovering from an industrial injury. The employer, Los Angeles County Metropolitan Transportation Authority (MTA), precluded the employee from returning to work because the AME concluded the employee should not do so without modifying her job. The MTA concluded it could not implement the modifications proposed by the AME and therefore deemed the employee a qualified injured worker.

The worker in *LAMTA* filed a grievance, seeking to return to work and recover backpay. (*LAMTA, supra,* 107 Cal.App.4th at p. 678.) Meanwhile, in the workers' compensation proceedings, both the AME and a doctor retained by MTA agreed the employee could return to work. (*Id.* at p. 680.) The employee's union filed a petition to compel arbitration of the employee's grievance seeking to return to work. The trial court denied the petition, noting that nothing in the collective bargaining agreement required " 'the MTA to arbitrate the issue of an employee's ability to return to work if the employee has a pending workers' comp claim and an agreed medical examiner has stated that the employee needs modification, vocational rehabilitation or restriction.' " (*Id.* at p. 681.) After the appeal was filed, the employee's underlying workers' compensation claims were resolved. (*Ibid.*)

The court in *LAMTA* rejected the employer's contention that the employee's grievance, seeking to return to work, related directly to her workers' compensation case and was an attempt to circumvent the workers' compensation findings and remedies. (*LAMTA, supra*, 107 Cal.App.4th at p. 682.) The *LAMTA* court concluded that, regardless of the underlying workers' compensation claims, the union, on behalf of the employee, was entitled to arbitrate the grievance. (*Ibid.*)

The court in *LAMTA* reasoned that the arbitration claim, "is the flip side of a workers' compensation claim and distinguishable from it." (*LAMTA, supra*, 107 Cal.App.4th at p. 683.) This is because the "arbitration claim does not seek 'compensation' or concern any related 'right or liability' [citation] for an 'industrial personal injury.' [Citation.] Rather, she seeks her salary for when she was allegedly no longer suffering the disabling effects of an industrial injury and was able to work, but was denied the right to work guaranteed in the collective bargaining agreement. [The employee] Sutherland thus did not attempt to arbitrate injury compensation issues that were pending before the WCAB, and the Union acknowledges that there cannot be a double recovery of backpay." (*Ibid.*)

The *LAMTA* court further noted that the employee's grievance "may reasonably be construed by an arbitrator to include not just a demand for back pay for when Sutherland should have been working, but also a demand that she actually be returned to work" (*LAMTA, supra*, 107 Cal.App.4th at p. 683), and "a return to work is not one of the workers' compensation benefits available by statute (Lab. Code, §§ 5300, 4550–4855) and covered by division 4 of the Labor Code to which the exclusive remedy rule would apply. (See [*Vacanti, supra*, 24 Cal.4th at p.] 817 . . . .) Sutherland's return to work was thus a remedy unavailable in this workers' compensation context, further undermining the notion of the exclusivity of workers' compensation as a remedy here. [¶] Accordingly, workers' compensation is not an exclusive remedy in the present situation and does not bar arbitration of Sutherland's claim." (*LAMTA, supra*, 107 Cal.App.4th at pp. 683–684.) The court added, "whether Sutherland was 'available' . . . for work even with a job modification or restriction, which the Union argues would not affect her normal job requirements, is a matter for the arbitrator to determine." (*Id.* at p. 687, citation omitted.)

Likewise, here, workers' compensation does not preclude the arbitrator from making findings that SunLine wrongfully refused to allow Navarette to return to work, and ordering his reinstatement, along with backpay.

SunLine argues *LAMTA, supra*, 107 Cal.App.4th 673 is distinguishable because *LAMTA* involved a petition for arbitration, rather than a petition to

vacate or modify an arbitration award. We do not consider this a significant difference since in both instances the underlying issue was whether the workers' compensation exclusive remedy doctrine barred arbitration of an employee grievance challenging the employer's refusal to allow an employee to return to work after sustaining an industrial injury.

SunLine acknowledges in its appellant's opening brief that under *LAMTA, supra,* 107 Cal.App.4th 673, SunLine was obligated by the MOU to arbitrate whether there was just cause to terminate Navarette, but argues the instant case is distinguishable because in *LAMTA,* there was no dispute among medical doctors as to the nature and extent of the employee's industrial injuries. Here, SunLine argues, Navarette's industrial injuries and remedies were subject to pending workers' compensation claims under the overriding, exclusive workers' compensation scheme. As a consequence, SunLine argues the arbitration award, ordering Navarette reinstated and entitled to backpay, must be vacated because it conflicts or may conflict with workers' compensation medical findings and compensation determinations. We disagree.

As in *LAMTA,* in the instant case the issue arbitrated did not require adjudication of any disputes over the nature of Navarette's industrial injuries or remedies. Even though there were pending, underlying workers' compensation claims, the arbitrator was not barred under the workers' compensation exclusive remedy doctrine from deciding whether Navarette was wrongfully precluded from returning to work and, as a consequence, terminated without good cause. (*LAMTA, supra,* 107 Cal.App.4th at p. 682.) As the California Supreme Court noted in *Vacanti,* courts have exempted wrongful termination claims from exclusivity and thus have allowed "an employee to recover economic damages on a wrongful termination claim because the damages arose out of the act of termination—and not out of an injury to the employee's person." (*Vacanti, supra,* 24 Cal.4th at p. 814; see also *Pichon v. Pacific Gas & Electric Co.* (1989) 212 Cal.App.3d 488, 500–501 [260 Cal.Rptr. 677] (*Pichon*).)

We also reject SunLine's contention that the arbitration award creates the possibility of double recovery. The court in *Pichon, supra,* 212 Cal.App.3d at page 501, acknowledged that "there is a substantial risk of double recovery if an employee does suffer a compensable injury in addition to incurring economic or contract damages as a result of the termination of employment because, in addition to compensating for medical costs, workers' compensation compensates for lost wages for the period of disability. Thus, if these damages were calculated without regard to the period of disability for which the employee may be compensated by workers' compensation, the employee would recover twice." According to the *Pichon* court, under such circumstances, "[t]he appropriate solution is to set off from any damages the amount

of compensation paid. Thus, for example, if appellant was in fact totally and permanently disabled, as claimed by the respondents in this case, he may not have any contract damages in excess of the compensation he is entitled to for this injury. In that case, it may then be appropriate to dismiss the remaining claims." (*Ibid.*)

Here, the arbitration award avoids double recovery. The award expressly provides that "reinstatement will include reimbursement for all back pay, less interim earnings, less vocational rehabilitation compensation as well as restoration of all benefits that the grievant lost as a result of the improper termination." The arbitrator further reserved jurisdiction over the issue of backpay in the event the parties were unable to reach agreement on the amount.

SunLine's reliance on *Sunnyvale Unified School Dist. v. Jacobs* (2009) 171 Cal.App.4th 168 [89 Cal.Rptr.3d 546] (*Sunnyvale*), for the proposition the arbitration award violates public policy and statutory rights under the WCA is misplaced. In *Sunnyvale*, a probationary teacher's labor representative filed a grievance on the teacher's behalf, complaining that the school district violated procedures required under the collective bargaining agreement when not reelecting a probationary teacher. (171 Cal.App.4th at p. 173.) The matter was arbitrated pursuant to the collective bargaining agreement, and the union labor representative petitioned to confirm the arbitration award. (*Id.* at p. 174.) The award ordered reinstatement of the probationary teacher based on a finding that the teacher was terminated in retaliation for participating in protected activities. (*Id.* at p. 173.)

On appeal, the *Sunnyvale* court held that, "Since the nonreelection decision may not be the subject of collective bargaining, the arbitrator has no jurisdiction over a nonreelection dispute." (*Sunnyvale, supra,* 171 Cal.App.4th at p. 183.) The *Sunnyvale* court concluded that, even though the collective bargaining agreement contained provisions setting forth arbitration procedures for grievances arising from not reelecting a probationary teacher, the arbitrator did not have any power to decide the grievance contesting nonreelection because the matter was preempted by state law and the exclusive jurisdiction of the Public Employment Relations Board (PERB). (*Id.* at pp. 173, 183.)

The instant case is distinguishable, not only because it does not concern PERB, but also because the issue arbitrated in this case does not fall within the exclusive jurisdiction of the WCAB. The arbitrator's jurisdiction over the termination grievance was not preempted by jurisdiction in another forum and there was thus no violation of any public policy or statutory right.

We note that, although the parties discuss at length *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 661 [150 Cal.Rptr. 250, 586 P.2d 564] (*Judson*), we decline to consider the decision since it concerns a theory raised by the respondents for the first time in this appeal. The respondents cite *Judson* for the proposition that termination of an employee due to absence from work because of an industrial injury constitutes unlawful discrimination under Labor Code section 132a. (*Judson*, at p. 661.) The respondents argue that the MOU provision, which SunLine relied upon in terminating Navarette (art. G-18, § 3 k)), was unlawful under *Judson* because it required termination of an employee whose absence due to industrial injury exceeded two years. Since this contention was not raised during the grievance proceedings, arbitration, or in the trial court, the issue was forfeited. (*Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108, 1117 [39 Cal.Rptr.2d 535]; *Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546 [39 Cal.Rptr.2d 432].) Even if not forfeited (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]), we need not consider the issue because we affirm the arbitration award on other grounds.

### 4. Exceeding an Arbitrator's Powers Under Section 1286.2, Subdivision (a)(4)

SunLine alternatively argues the arbitration award should be vacated under section 1286.2 subdivision (a)(4) because the arbitrator exceeded his express and implied powers under the MOU.

Subdivision (a)(4) of section 1286.2 states: ". . . the court shall vacate the award if the court determines any of the following: [¶] . . . [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

The arbitrator's powers in the instant case are derived from, and limited by, the MOU. If the arbitrator exceeds those powers, the award may, under sections 1286.2 and 1286.6, be vacated or corrected by the court. (*San Francisco Housing Authority v. Service Employees Internat. Union, Local 790* (2010) 182 Cal.App.4th 933, 943 [107 Cal.Rptr.3d 62].) " '[W]hether the award was made in excess of the arbitrators' contractual powers' is a question of law." (*Id.* at p. 944, quoting *Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1365 [131 Cal.Rptr.2d 524].)

In determining whether the arbitrator exceeded his powers under subdivision (a)(4) of section 1286.2, we look to the provisions of the MOU, which provides that SunLine employees can be disciplined only for "proper cause" (art. G-20, § 3). The MOU also states various reasons for employees

losing seniority rights and being terminated, including the absence of an employee from work for an industrial injury for more than two years (art. G-18, § 3 k)).

The mutually agreed-upon issue submitted by the parties for arbitration under the MOU was the following: "Was the grievant terminated for just/proper cause? [¶] If not, what is the appropriate remedy?" The arbitration award states this as the issue addressed in the award and concludes: "[T]he *weight of the evidence* demonstrates that the employer *did not* have proper and just cause to terminate the grievant. As such the grievance is sustained." As a consequence, SunLine was ordered to reinstate Navarette to his former position, with backpay.

On its face, this disposition, reinstating Navarette and awarding backpay, does not exceed the arbitrator's power under the MOU. SunLine argues, however, that in reaching this decision, the arbitrator exceeded his arbitration powers because (1) the MOU did not vest the arbitrator with authority to determine the scope or extent of Navarette's underlying medical disabilities that led to his absence from work; and (2) even if the parties attempted to empower the arbitrator with such authority, they could not have lawfully done so because the workers' compensation exclusive remedy doctrine barred the arbitrator from deciding the scope and extent of Navarette's underlying medical disabilities. As discussed above, the workers' compensation exclusive remedy doctrine did not bar arbitration of Navarette's termination grievance and the arbitrator did not adjudicate the extent of Navarette's industrial injuries or entitlement to workers' compensation remedies.

SunLine further argues the arbitrator had no implied authority to evaluate or assess the strength of the AME report and give more weight to Navarette's treating physician's report when determining whether there was just cause to terminate Navarette's employment. The AME report, however, was not relevant because it was prepared and sent to the parties about a month after SunLine notified Navarette that he could not return to work and was terminated under article G-18, section 3 k) of the MOU. Furthermore, a determination of Navarette's actual industrial injuries and entitlement to treatment and compensation was not at issue and was not decided by the arbitration.

The only issue arbitrated was whether there was good cause for SunLine not allowing Navarette to return to work because of the 30-pound lifting restriction. The arbitrator concluded there was no good cause because Navarette's job did not require him to lift 30 pounds or more. Such a determination was well within the scope of the arbitrator's powers under the MOU, regardless of the AME report. This court will not review the validity

of the arbitrator's reasoning or the sufficiency of the evidence supporting the award. (*Jones, supra*, 130 Cal.App.4th at p. 408.)

### 5. SunLine's Estoppel Contention

SunLine contends the arbitration award should be vacated because the evidence presented at arbitration, including the AME report and evidence of Navarette's prior work history, established that SunLine had good reason to refuse to allow Navarette to return to work. The evidence showed that Navarette had been in three prior industrial injuries, in October 2002, December 2002, and June 2004, while Navarette was attempting to tie down or lock in place wheelchairs. He also sustained other industrial injuries, with various workers' compensation claims pending when the subject AME report was prepared in November 2008. The AME found Navarette's physical disabilities were permanent and stationary, and precluded him from ever returning to his job.

Citing *Sea World Corp v. Superior Court* (1973) 34 Cal.App.3d 494 [110 Cal.Rptr. 232] (*Sea World*), SunLine argues that, because Navarette did not contest the AME report, the arbitrator and trial court should have concluded respondents were estopped from using the arbitration as a competing forum to contest the AME report's findings and conclusions as to Navarette's permanent disabilities and ability to return to work.

In *Sea World, supra*, 34 Cal.App.3d 494, an injured employee filed a claim in both the trial court, seeking personal injury damages, and with the WCAB, seeking workers' compensation benefits. The court in *Sea World* held that Sea World waived or was estopped from challenging the trial court's jurisdiction over the issue of subject matter jurisdiction. The *Sea World* court explained that, normally, the forum that first invokes jurisdiction to decide the threshold question of subject matter jurisdiction has the exclusive power to decide the jurisdiction issue and the decision will be conclusive upon the other forum. (*Id*. at pp. 497, 499.) However, the forum where jurisdiction first attaches may yield it and thus be estopped from later asserting subject matter jurisdiction. (*Id*. at pp. 499, 501.)

Here, SunLine argues, Navarette should have been estopped from proceeding with arbitration because Navarette previously invoked WCAB jurisdiction in the WCAB as to the same issues underlying his termination grievance, which were addressed in the AME report. Navarette could have contested the AME report but did not do so. SunLine claims that because of Navarette's workers' compensation claims and acquiescence to the AME report, he is estopped from seeking arbitration of the same underlying issues. We disagree.

Here, unlike in *Sea World*, there was no overlap of jurisdiction since Navarette's termination grievance was not subject to workers' compensation jurisdiction and respondents did not waive the arbitrator's jurisdiction over the matter. In addition, arbitration of the termination grievance did not require findings as to Navarette's actual physical condition and entitlement to workers' compensation remedies.

### 6. The Union's Cross-appeal

In the Union's cross-appeal, the Union contends the trial court improperly inserted into the judgment language declaring that Navarette "is judicially estopped later to claim continuing permanent disability benefits in the pending Workers' Compensation case." The Union contends that, under section 1287.4, the trial court did not have authority to issue a judgment containing this additional language, which was not included in the arbitration award or trial court order granting respondents' petition to confirm the award. We agree.

Section 1287.4 states that "If an award is confirmed, judgment shall be entered in conformity therewith." The arbitration award and the trial court order, granting respondents' petition to confirm the award, made no mention that Navarette was judicially estopped from claiming continuing permanent disability benefits in his pending workers' compensation case. This was neither an issue to be decided by arbitration nor relief requested in SunLine's petition to vacate or modify the arbitration award.

Furthermore, the trial court's reference to workers' compensation remedies was inappropriate since determination of such remedies falls within the exclusive jurisdiction of the WCAB. The instant case only concerns the issue of whether SunLine wrongfully terminated Navarette in February 2008, and, if so, what his remedies were (i.e., reinstatement and backpay). This does not encompass the separate workers' compensation issues concerning Navarette's entitlement to workers' compensation remedies and the actual nature and extent of Navarette's disabilities.

Because the trial court exceeded its authority by adding to the judgment relief not mentioned in the arbitration award or trial court order granting confirmation of the award, the inappropriate language is not in conformity with the arbitration award and therefore must be stricken from the judgment. (§ 1287.4.)

### 7. Disposition

As requested in the Union's cross-appeal, the language in the judgment, declaring that Navarette "is judicially estopped later to claim continuing permanent disability benefits in the pending Workers' Compensation case" (¶ 3, p. 2), is ordered stricken. As modified, the judgment is affirmed. The respondents are awarded their costs on appeal.

McKinster, J., and Miller, J., concurred.